10-2058-cv; 10-2190-cv
Abrahams v. MTA Long Island Bus; Cruz v. Nassau County

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2010

_____

(Argued in Tandem: October 6, 2010     Decided: May 5, 2011)

Docket Nos. 10-2058-cv, 10-2190-cv
(consolidated for disposition)

_____

DANNY ABRAHAMS, ANTHONY CELARDO, KEVIN CHRISTMAN, LAUREN EPSTEIN, MERYL JACKELOW, EVAN SKIDMORE, DAVID TINDAL, LEE WOLBRUM,

*Plaintiffs-Appellants*,

–v.–        No. 10-2058-cv

MTA LONG ISLAND BUS,

*Defendant-Appellee.*[*]

_____

PABLO CRUZ, MAUREEN HARTNETT, JOEL STEELE,

*Plaintiffs-Appellants*,

–v.–        No. 10-2190-cv

NASSAU COUNTY, MTA LONG ISLAND BUS,

*Defendants-Appellees.*

_____

Before:  SACK, B.D. PARKER, and RAGGI, *Circuit Judges*.

---

[*]  The Clerk of Court is directed to amend the official caption to read as shown above.

_____

Appeal from two judgments of the United States District Court for the Eastern District of New York (Feuerstein, *J.*) granting defendants-appellees' motions to dismiss plaintiffs-appellants' claims based on, *inter alia*, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and denying plaintiffs-appellants' motions for a preliminary injunction.

AFFIRMED.

_____

ROBERT L. SCHONFELD, Moritt Hock Hamroff & Horowitz LLP, Garden City, NY, *for Plaintiffs-Appellants Danny Abrahams, Anthony Celardo, Kevin Christman, Lauren Epstein, Meryl Jackelow, Evan Skidmore, David Tindal, and Lee Wolbrom.*

ROBERT R. BRIGLIO, Nassau/Suffolk Law Services Committee, Inc., Islandia, NY, *for Plaintiffs-Appellants Pablo Cruz, Joel Steele, and Maureen Hartnett.*

HELENE FROMM, Deputy General Counsel (Shawn M. Friedman, Peter Sistrom, *of counsel*, *on the brief*), Metropolitan Transportation Authority, New York, NY, *for Defendant-Appellee MTA Long Island Bus.*

_____

BARRINGTON D. PARKER, *Circuit Judge*:

These consolidated appeals address issues relating to a municipality's obligations under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, when paratransit services beyond those required by the ADA are reduced. Paratransit services are public transportation services for disabled users. In both *Abrahams v. MTA Long Island Bus* and *Cruz v. Nassau County*, plaintiffs sued defendants Nassau County, New York and/or MTA Long Island Bus (the "MTA"), asserting claims under the ADA and the Rehabilitation Act of 1973, 29

2

U.S.C. § 701 *et seq.* The gravamen of the lawsuits is that defendants implemented substantial reductions in paratransit services without allowing for the public participation by users of the services required by ADA regulations, and failed to make reasonable modifications to existing services so as to ameliorate the effect of the service reductions.

The United States District Court for the Eastern District of New York (Feuerstein, *J.*) dismissed both cases on the grounds that the regulations did not apply to the service cuts in question and that the reasonable modifications requirement did not apply to paratransit services. This appeal followed. We affirm.

## BACKGROUND

The ADA requires municipalities to provide paratransit and other special transportation services to individuals whose disabilities do not permit them to use the regular fixed routes. *See* 42 U.S.C. § 12143(c)(1). The level of this service must be "comparable" to that afforded riders who are not disabled. 49 C.F.R. § 37.3. Under an operating agreement with Nassau County, the MTA provides public transportation services in the County. Entities providing such services are required by the ADA to submit to the Federal Transit Administration ("FTA") "a plan for providing paratransit and other special transportation services" to disabled individuals. 42 U.S.C. § 12143(c)(7). The ADA also requires public entities to ensure that particular public participation procedures are utilized in developing their initial plan. *See* 49 C.F.R. § 37.137(b). These procedures include outreach, consultation with individuals with disabilities, opportunity for public comment, and a public hearing. 49 C.F.R. § 37.137(b)(1)-(4).

In response to the ADA's requirements, defendants in 1998 developed and later implemented an ADA Compliance Plan. There is no indication in the record that the required public participation did not occur in the development of defendants' initial paratransit plan. As part of the plan, defendants offered a paratransit service called "Able-Ride," which provided door-to-door service to disabled riders. Able-Ride provided service both to areas required by the ADA (the "ADA service area") and to areas outside that service area. Specifically, although the ADA's implementing regulations only require a municipality to offer paratransit services within three-quarters of a mile of a fixed route, *see* 49 C.F.R. § 37.131(a)(1)(i), Able-Ride transported disabled residents door-to-door anywhere within Nassau County. In other words, under the plan, defendants provided a level of service that not only fully complied with, but substantially exceeded, what the ADA required. The FTA approved the plan and in 2004 concluded that defendants were in full compliance with the ADA.

Plaintiffs are disabled residents of Nassau County who qualify for the Able-Ride program. They all suffer from a variety of serious mental and physical ailments, including cerebral palsy, depression, mild mental retardation, and permanent blindness. Several plaintiffs are on kidney dialysis, which substantially limits their mobility and necessitates the use of a driver to attend medical appointments. Many of the plaintiffs also depend on a wheelchair. All plaintiffs regularly used Able-Ride as their primary mode of transportation to or from locations outside the ADA service area.

Around 2010, Nassau County, like many other municipalities, was experiencing substantial budget shortfalls necessitating reductions in government spending in a variety of

4

areas. Paratransit service offered to locations not required by the ADA was one of the areas targeted for cuts.

In January 2010, MTA officials met with a group known as the Accessible Transportation Oversight Committee ("ATOC"), an advisory committee that includes people with disabilities, many of whom used the Able-Ride service, and notified them in a general way of impending service cuts. Additional specific information was promised for a subsequent March meeting. In February, the MTA distributed notices on Able-Ride vehicles advertising a March 1, 2010 public hearing regarding, among other things, proposed changes in the MTA's level of services. The public hearing notice also stated that "other service-related changes . . . that may also affect the operation and general provision of service of . . . Able-Ride" were among "the proposed changes," and that "[a]lthough these proposed changes do not require public hearing, they are described in informational material available on the MTA website." Plaintiffs contend that such a disclaimer discouraged individuals with disabilities from attending the March 1 hearing, which was attended by few such individuals. The ATOC held a subsequent meeting on March 9, 2010 to explain the service cuts. The next day, the MTA notified all Able-Ride users by letter of the impending cuts. A short while later, the MTA eliminated most of the Able-Ride service beyond the ADA service area.

Plaintiffs contend that defendants' steps in implementing the service cuts were insufficient and violated 49 C.F.R. § 37.137(c), a Department of Transportation ("DOT") regulation, promulgated pursuant to the ADA, which requires public entities to provide an "ongoing mechanism for the participation of individuals with disabilities in the continued

5

development and assessment of services to persons with disabilities." Specifically, plaintiffs allege that defendants violated the regulation by deciding to implement the service cuts without consulting with plaintiffs or other disabled individuals in Nassau County who used the Able-Ride service. In addition, the Cruz plaintiffs contend that by failing to prioritize Able-Ride services outside the ADA service area so as to provide services to individuals who have the greatest need for them, defendants violated 28 C.F.R. § 35.130(b)(7), the Department of Justice's ("DOJ") "reasonable modifications" regulation, which was also promulgated pursuant to the ADA.

Both the Cruz and the Abrahams plaintiffs moved for preliminary injunctions. The County and the MTA opposed the motions and moved to dismiss the complaints. The County argued that it was not a proper party, contending that, under its agreement with the MTA, the MTA is the entity that provides paratransit services in Nassau County and that the MTA is the only entity that has the unqualified right to establish and change the paratransit services in question.[1] The MTA argued that no private right of action exists under the ADA to enforce the DOT's public participation regulations and that, even if a right does exist, no violation of the regulations occurred. The MTA also argued that the Cruz plaintiffs' reasonable modification claim failed because the reasonable modifications regulation, which was promulgated by the

---

[1] Although the County is named as a party in the Cruz plaintiffs' appeal, it did not submit briefing or appear for oral argument. Instead, the County informed the Court that it took no position on the appeal because under its Lease and Operating Agreement with the MTA, it is bound to defer to the MTA for all operating determinations.

Attorney General, did not apply to services such as paratransit services, that fell within the exclusive purview of the Secretary of Transportation.

The district court denied interlocutory relief and dismissed the complaints under Federal Rule of Civil Procedure 12(b)(6). It held that the public participation regulations only apply to the development of a paratransit plan, not to subsequent modifications, reasoning that although public participation may be required under the ADA's regulations if an entity is not yet in compliance with the ADA, entities in full compliance (such as defendants) that elect to provide services above and beyond what the ADA requires are not subject to this obligation.[2] Finding the public participation regulations inapplicable, the district court did not reach the question of whether the DOT's ongoing public participation regulation could be enforced through a private right of action. As to the Cruz plaintiffs' reasonable modification claim, the district court found 28 C.F.R. § 35.130(b)(7), the DOJ's regulation requiring reasonable modifications, inapplicable because, in the court's view, paratransit services were under the exclusive authority of the Secretary of Transportation. Finally, finding that plaintiffs had failed to state a claim upon which relief could be granted, the district court denied plaintiffs' motions for preliminary injunctions. This appeal followed.

---

[2] Under 49 C.F.R. § 37.135(c), public entities are required to submit an annual update to their paratransit plan. However, "[i]f an entity has met and is continuing to meet all requirements for complementary paratransit . . . the entity may submit to FTA an annual certification of continued compliance in lieu of a plan update . . . [and] [t]he requirements of §§ 37.137(a) and (b) . . . do not apply when a certification is submitted under this paragraph." 49 C.F.R. § 37.135(c)(1).

**DISCUSSION**

We review a district court's dismissal of a complaint for failure to state claim *de novo*. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). We review a district court's denial of a preliminary injunction for abuse of discretion. *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010). A district court abuses its discretion when it rests its decision on an error of law or clearly erroneous finding of fact. *Id.* at 508.

We first consider whether a private right of action exists to enforce 49 C.F.R. § 37.137(c), the DOT's ongoing public participation regulation. Although the district court did not address this issue, we conclude that it is appropriate for us to do so. "[W]e may affirm a decision on any grounds supported in the record, even if it is not one on which the trial court relied." *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 125 (2d Cir. 2011); *see also Price v. City of Stockton*, 390 F.3d 1105, 1108 (9th Cir. 2004) (reaching issue of whether statute created private right of action even though district court failed to address the issue in first instance). Second, we consider whether defendants were obligated to restructure the Able-Ride program so as to make "reasonable modifications . . . to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). Both issues are matters of first impression in our Circuit.

**I.      Statutory and Regulatory Framework**[3]

Congress passed the ADA to provide "a clear and comprehensive national mandate forthe elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1). Title II of the ADA covers discrimination in the provision of public services and is divided into Parts A and B.  *See* 42 U.S.C. § 12131 *et seq.*  Part A governs public services generally.  It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132. Section 12134(a) gives the Attorney General the authority to promulgate regulations to implement Part A.  42 U.S.C. § 12134(a).

Part B of Title II specifically governs the provision of public transportation services.  *See* 42 U.S.C. §§ 12141-12165.  Section 12143, the provision governing paratransit services, requires public entities operating fixed route transportation systems to provide disabled persons with paratransit services that are "comparable to the level of designated public transportation services provided to individuals without disabilities."  42 U.S.C. § 12143(a).  Failure to do so "shall be considered discrimination for purposes of section 12132."  *Id.*

The Secretary of Transportation has the exclusive authority to issue final regulations implementing Part B.  *See* 42 U.S.C. §§ 12143(b), 12149, 12164.  Section 12143(c) sets out the

---

[3]  Plaintiffs assert claims under both Title II of the ADA and Section 504 of the Rehabilitation Act.  Because the ADA and the Rehabilitation Act impose nearly identical requirements, we focus on the ADA but our analysis applies to the Rehabilitation Act as well. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003); *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999).

required content of the regulations issued to implement the paratransit provision. Section 12143(c)(6), labeled "Public participation," provides that "[t]he regulations issued under this section shall require that each public entity which operates a fixed route system hold a public hearing, provide an opportunity for public comment, and consult with individuals with disabilities in preparing its [paratransit] plan under paragraph (7)." Paragraph (7) directs the issuance of regulations requiring public entities to (1) submit and commence implementation of an initial plan that meets the requirements of the ADA and (2) submit an annual update to any such plan. 42 U.S.C. § 12143(c)(7). Section 12143(e)(1) provides that the term "discrimination," as used in § 12143(a), includes "a failure of a public entity . . . to submit, or commence implementation of, a plan in accordance with subsections (c)(6) and (c)(7)." 42 U.S.C. § 12143(e)(1).

In response to § 12143, the Secretary of Transportation promulgated regulations governing the provision of paratransit services, including regulations concerning the required paratransit service area and the development and submission of paratransit plans. *See* 49 C.F.R. §§ 37.131, 37.135, 37.137. The DOT regulations require that a public entity "provide complementary paratransit service to origins and destinations within corridors with a width of three-fourths of a mile on each side of each fixed route." 49 C.F.R. § 37.131(a)(1)(i). However, public entities are also permitted to provide "additional service" beyond that required by the ADA and the DOT regulations. 42 U.S.C. § 12143(c)(5); 49 C.F.R. § 37.131(g). In *developing* its initial paratransit plan, the DOT regulations require an entity to ensure that particular public

10

participation procedures are utilized. *See* 49 C.F.R. § 37.137(b).[4]  Under 49 C.F.R. § 37.137(c), the entity must also permit the participation of people with disabilities in the *ongoing* "development and assessment" of paratransit services.  "This includes, but is not limited to, the development of the initial plan, any request for an undue financial burden waiver, and each annual submission."  49 C.F.R. § 37.137(c).  Section 37.137(c)'s ongoing requirement of public participation is at the heart of this dispute.

**II.    Public Participation Claims**

---

[4]  Those procedures are:

(1) Outreach.  Each submitting entity shall solicit participation in the development of its plan by the widest range of persons anticipated to use its paratransit service. Each entity shall develop contacts, mailing lists and other appropriate means for notification of opportunities to participate in the development of the paratransit plan;

(2) Consultation with individuals with disabilities.  Each entity shall contact individuals with disabilities and groups representing them in the community. Consultation shall begin at an early stage in the plan development and should involve persons with disabilities in all phases of plan development. All documents and other information concerning the planning procedure and the provision of service shall be available, upon request, to members of the public, except where disclosure would be an unwarranted invasion of personal privacy;

(3) Opportunity for public comment.  The submitting entity shall make its plan available for review before the plan is finalized.  In making the plan available for public review, the entity shall ensure that the plan is available upon request in accessible formats;

(4) Public hearing.  The entity shall sponsor at a minimum one public hearing and shall provide adequate notice of the hearing, including advertisement in appropriate media, such as newspapers of general and special interest circulation and radio announcements . . . .

49 C.F.R. § 37.137(b)(1)-(4).

11

Plaintiffs advance three arguments regarding their public participation claims: first, that a private right of action exists to sue for violations of the DOT's ongoing public participation regulation; second, that the district court erred in concluding that the public participation requirements did not apply to additional services; and third, that defendants violated § 37.137(c) by failing to create an adequate mechanism of public participation before eliminating the portions of the Able-Ride service not required by the ADA. As set forth below, we are not persuaded that a private right of action exists. Because this conclusion resolves the appeal, we need not reach the remaining arguments.[5]

Our analysis is driven by *Alexander v. Sandoval*, 532 U.S. 275 (2001). In *Sandoval*, the Supreme Court addressed whether a private right of action existed to enforce a DOJ regulation

---

[5] Although we need not reach plaintiffs' argument regarding the applicability of § 37.137(c) to additional services or their argument concerning the regulation's precise scope in light of our holding that there is no private right of action, we find it appropriate to make two observations here. First, although the district court held that the ongoing public participation requirement does not apply to additional services, at oral argument, the MTA's counsel seemed to concede that it in fact did apply and that § 37.137(c) imposed an "obligation" on the MTA that did not exclude the additional service changes. *See* Tr. of Oral Arg. at 20, 27, 28. The MTA's counsel simply argued that the public participation process it used in making these service changes met the requirements of § 37.137(c).

Second, although we are not called to adjudicate the precise scope of § 37.137(c), we observe that in order for an ongoing public participation requirement to have teeth, it must require more than a mere notification of service change (which is all that plaintiffs allege occurred here). Indeed, we agree with plaintiffs' counsel's statement at oral argument that the drafters of the ADA could not have intended that the statute's public participation requirements be satisfied by a mere "meaningless gesture." Tr. of Oral Arg. at 39. However, it is unclear to us whether the regulation requires advance notice and an opportunity to be heard regarding every proposed change in service (as plaintiffs seem to suggest), or whether it merely requires a continuing ability to comment on the assessment of a public entity's paratransit services (as the MTA seems to suggest). Due to the ambiguity in the DOT regulations in this area, we believe that the DOT might wish to examine and clarify the scope of § 37.137(c)'s ongoing public participation requirement.

promulgated pursuant to Title VI of the Civil Rights Act of 1964. *Id.* at 278. Section 601 of Title VI barred recipients of federal funding from intentional invidious discrimination; section 602 authorized the DOJ to effectuate § 601 by promulgating regulations. 42 U.S.C. §§ 2000d, 2000d-1. One such regulation, 28 C.F.R. § 42.104(b)(2), went beyond intentional discrimination and prohibited recipients of federal funding from utilizing criteria which had a discriminatory effect. The plaintiffs, who were non-fluent English speakers, challenged an Alabama policy of administering driver's license examinations exclusively in English on the ground that the policy had a discriminatory effect on non-English speakers and, consequently, violated § 42.104(b)(2).

The Court concluded that the regulation was not enforceable through a private right of action. It first noted that "private rights of action to enforce federal law must be created by Congress" and the statute in question must evidence congressional intent to create a private right of action. *Sandoval*, 532 U.S. at 286. Absent such intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87.

Next, the Court observed that although it previously had held that Congress intended § 601 to be enforceable through a private right of action, that right did not automatically extend to the statute's implementing regulations. "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 291. Concluding that § 601 prohibited only intentional discrimination, the Court held that the discriminatory effect regulation was not enforceable through private action under § 601 because the regulation did not simply apply § 601's prohibition on intentional

discrimination but went further and prohibited conduct that § 601 did not. *Id.* at 285, 293. In other words, the Court held that the private action available for enforcing § 601 did not extend to a regulation that substantively expanded the provision.

The implications of *Sandoval* are clear: If a private right of action exists to enforce the DOT's "public participation" regulation, plaintiffs must show that the right originates in 42 U.S.C. § 12143, the underlying statute regulating paratransit services. Plaintiffs must also show that the regulation applies—but does not expand—the statute.

Although the Supreme Court has never addressed whether § 12143 supports a private right of action, it held in *Barnes v. Gorman*, 536 U.S. 181 (2002), that Congress intended to create a private right of action to enforce 42 U.S.C. § 12132, Title II's general anti-discrimination provision. *See id*. at 184-85 ("Thus, the remedies for violations of § 202 of the ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964 . . . ."). In this Circuit, "[t]o discover whether Congress intended that the Act be enforceable by a private right of action, we look to the 'text and structure' of the statute." *George v. N.Y.C. Dep't of City Planning*, 436 F.3d 102, 103 (2d Cir. 2006); *see Olmsted v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429, 432 (2d Cir. 2002) ("The Supreme Court has established that courts must look to the intent of Congress in determining whether a federal private right of action exists for violations of a federal statute."). As we have noted, 42. U.S.C. § 12132 broadly bars discrimination on the basis of disability in the services, programs, or activities of a public entity. Section 12143 defines "discrimination" "for purposes of section 12132" as follows:

14

> It shall be considered discrimination . . . for a public entity which operates a fixed route system (other than a system which provides solely commuter bus service) to fail to provide with respect to the operations of its fixed route system, in accordance with this section, paratransit and other special transportation services to individuals with disabilities, including individuals who use wheelchairs, that are sufficient to provide to such individuals a level of service (1) which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system; or (2) in the case of response time, which is comparable, to the extent practicable, to the level of designated public transportation services provided to individuals without disabilities using such system.

42 U.S.C. § 12143(a). By tying this subsection to the definition of discrimination in § 12132, we conclude that Congress intended the statute to confer a private right of action to enforce § 12143, including § 12143(c)(6)'s public participation requirements. *See* 42 U.S.C. § 12143(e) (defining a failure to provide public participation under subsection (c)(6) as "discrimination" under § 12143(a) of the ADA).

Having found a private right of action under § 12143, we now must determine whether 49 C.F.R. § 37.137(c), the regulation promulgated pursuant to § 12143 that requires ongoing public participation in the management of paratransit services, enforces § 12143 or imposes obligations not found in the statute.[6]

---

[6] To the extent that plaintiffs argue that we should instead look to whether 49 C.F.R. § 37.137 as a whole implements 42 U.S.C. § 12143, we disagree. Although it is true that 49 C.F.R. § 37.137(a) and (b) are more closely tied to the ADA's statutory language, it cannot be the case that § 37.137(c) can simply piggyback on these subsections for purposes of determining whether there is a private right of action to enforce § 37.137(c) if the regulation itself does not effectuate 42 U.S.C. § 12143. *See Am. Ass'n of People with Disabilities v. Harris*, 605 F.3d 1124, 1135 n.24 (11th Cir. 2010) (noting that *Sandoval* requires courts to "examin[e] each regulation individually to see if it evinced congressional intent to enforce the regulations through a private right of action" and noting that *Sandoval* should not be applied "in a categorical manner to several ADA regulations").

15

Looking first to the language of § 12143, we see that the statute requires public participation in connection with the development and submission of a public entity's initial paratransit plan and annual plan updates. But that is all § 12143 requires in terms of public participation; it does not require any other ongoing form of public participation. Section 12143 contains a single reference to public participation: "The regulations issued under this section shall require that each public entity which operates a fixed route system hold a public hearing, provide an opportunity for public comment, and consult with individuals with disabilities in *preparing* its plan under paragraph (7)." 42 U.S.C. § 12143(c)(6) (emphasis added). Paragraph (7) requires that public entities submit an initial plan for meeting the requirements of the ADA, *see id.* § 12143(c)(7)(A), and an annual update, *see id.* § 12143(c)(7)(B). Reading §§ 12143(c)(6) and 12143(c)(7) together, it is apparent that the statue's public participation requirements *only* apply when a public entity is submitting its initial plan or an annual plan update. But neither of these situations applies to the MTA. It is undisputed that the MTA had already developed, submitted, and implemented an ADA-compliant paratransit plan, and because the plan was ADA-compliant, the MTA was not obligated to submit an annual plan update. *See* 49 C.F.R. § 37.135(c)(1). Therefore, the MTA fully satisfied § 12143's public participation requirements.

Turning to the regulation at issue, we find that it does not "simply apply" the express mandate of § 12143. *See Sandoval*, 532 U.S. at 285. To the contrary, by its own terms, the "ongoing requirement" of 49 C.F.R. § 37.137(c) has a broader application than the implementation of an initial plan or the submission of annual updates. *See* 49 C.F.R. § 37.137(c)

16

("The entity shall create an ongoing mechanism for the participation of individuals with disabilities in the *continued development and assessment of services* to persons with disabilities. This includes, *but is not limited to*, the development of the initial plan, any request for an undue financial burden waiver, and each annual submission." (emphasis added)). Tellingly, a public entity may be in full compliance with § 12143's public participation requirements, while simultaneously violating § 37.137(c)'s ongoing public participation requirement.

Although § 37.137(c) may create a procedural requirement that a public entity permit ongoing public participation in developing and assessing the paratransit services it offers to individuals with disabilities, the absence of such a requirement from § 12143 indicates that Congress did not provide that an entity's failure to do so constituted discrimination under § 12143. If this failure to permit public participation does not constitute discrimination under § 12143, § 37.137(c) may not, we hold, be enforced in a private right of action based on § 12143.[7]

**III.     The Cruz Plaintiffs' Reasonable Modification Claim**

We now turn to the Cruz plaintiffs' contention that defendants' failure to modify the Able-Ride program so as to permit plaintiffs to continue to use the service beyond the ADA

---

[7] In reaching this conclusion, we follow the other circuits that have found no private right of action to enforce a regulation that creates obligations that are not imposed by the regulation's controlling statute. *See Lonberg v. City of Riverside*, 571 F.3d 846, 850-52 (9th Cir. 2009) (finding no private right of action to enforce a regulation of the ADA "through § 202's private right of action because the obligations [the regulation] imposes are nowhere to be found in § 202's plain language"); *Iverson v. City of Bos.*, 452 F.3d 94, 100 (1st Cir. 2006) ("Under *Sandoval* . . . a private plaintiff may not, merely by referencing the organic statute, enforce regulations that interdict a broader swath of conduct than the statute itself prohibits.").

service area violated 28 C.F.R. § 35.130(b)(7), the reasonable modifications provision promulgated pursuant to the ADA. The resolution of this question depends on whether the ADA requires a public entity to make reasonable modifications to "additional services."

As previously mentioned, the Attorney General has the exclusive authority to promulgate regulations to implement Part A of Title II of the ADA. *See* 42 U.S.C. § 12134(a). One such regulation, 28 C.F.R. § 35.130(b)(7), requires a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." The Secretary of Transportation has the authority to issue final regulations implementing Part B of Title II, including regulations governing the provision of paratransit services. *See* 42 U.S.C. §§ 12143(b), 12149, 12164. To date, the Secretary of Transportation has not promulgated regulations requiring public entities to make reasonable modifications to avoid discriminating against disabled individuals. *See* 49 C.F.R. pt 37.

The district court held that because the provision of paratransit services is covered by Part B, public entities that provide paratransit services are not subject to the reasonable modifications regulation issued by the Attorney General. As the district court also noted, two other circuits have reached the same conclusion, albeit in the context of required services. *See Boose v. Tri-County Metro. Transp. Dist. of Or.*, 587 F.3d 997, 1002 (9th Cir. 2009); *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 675 (5th Cir. 2004).

18

The Cruz plaintiffs argue that this analysis fails because paratransit rides to areas outside the ADA service area qualify as "additional services," which are not governed by 42 U.S.C. § 12143(c). Therefore, the Cruz plaintiffs assert, the provision of additional services is not under the exclusive regulatory authority of the Secretary of Transportation. They contend that DOT regulations, specifically 49 C.F.R. § 37.21(c), support this conclusion. The regulation provides:

> Entities to which this part applies also may be subject to ADA regulations of the Department of Justice (28 CFR parts 35 or 36, as applicable). The provisions of this part shall be interpreted in a manner that will make them consistent with applicable Department of Justice regulations. In any case of apparent inconsistency, the provisions of this part shall prevail.

49 C.F.R. § 37.21(c). Because the requested modification to Able-Ride is not inconsistent with DOT regulations, the argument goes, the MTA is subject to the DOJ's reasonable modifications requirement.

We are not persuaded. The conclusion that paratransit services, *including* "additional services," are covered by the DOJ regulations would be incompatible with 42 U.S.C. § 12134(a), the statute under which the DOJ reasonable modifications regulation was promulgated. Section 12134 provides that the DOJ regulations "shall *not* include any matter *within the scope of the authority* of the Secretary of Transportation." 42 U.S.C. § 12134(a) (emphasis added). The "additional service" in question clearly falls under that Secretary's authority.[8] *See* 42 U.S.C. § 12143(c)(5). Accordingly, we read § 12134 to mean that the DOJ's reasonable modifications

---

[8] While not explicitly conceding this point, the Cruz plaintiffs' do not seem to argue that the Able-Ride service at issue here is not within the Secretary of Transportation's scope of authority. Indeed, such a position would cut against the merits of plaintiffs' public participation claim. Specifically, a holding that additional services are not within the Secretary's authority would seem to foreclose any claim that additional services *are* subject to the DOT's regulations requiring public entities to provide a mechanism for ongoing public participation.

19

regulation does not apply to public entities providing paratransit services outside the ADA service area.

In addition, consistent with § 12134's statutory limitation on the scope of DOJ authority, the DOJ specifically provides that its regulations do not apply to areas that are "covered by subtitle B of title II of the ADA." 28 C.F.R. § 35.102(b).[9] Although it is true that the DOT regulations at least acknowledge that public entities that provide transportation services "*may* be subject to ADA regulations of the Department of Justice" and that the DOT regulations shall be interpreted to be consistent with "*applicable* Department of Justice regulations," 49 C.F.R. § 37.21 (emphasis added), we find this language too conjectural and imprecise to demonstrate actual incorporation. On other occasions the DOT has promulgated regulations requiring private entities to "compl[y] with the requirements of the rules of the Department of Justice concerning eligibility criteria, making reasonable modifications, providing auxiliary aids and services, and removing barriers (28 C.F.R. §§ 36.301-306)." 49 C.F.R. § 37.5(f). If the DOT wishes to

---

[9] Interpreting the term "covered" in its most restrictive sense, the Cruz plaintiffs seem to argue that this regulation is not applicable because additional services are not "covered" under Part B. Although, when read alone, one could reasonably interpret the term "covered" to only include services that are specifically addressed by the DOT regulations, such a restrictive interpretation would be entirely inconsistent with the text of the DOJ regulations' authorizing statute, which exempts all matters within the Secretary's *scope of authority*. *See* 42 U.S.C. § 12134(a). Based on our reading of 42 U.S.C. § 12134, we are unable to accept the Cruz plaintiffs' restrictive interpretation. *See Ins. Co. of N. Am. v. Gee*, 702 F.2d 411, 414 (2d Cir. 1983) ("Regulations promulgated pursuant to rulemaking authority conferred by statute assume the force of law only to the extent consistent with the statutory scheme they were designed to implement.").

incorporate by reference DOJ regulations, we are confident that it knows how to do so. *See*

*Boose*, 587 F.3d at 1004.[10]

## CONCLUSION

For the foregoing reasons, the judgments of the district court are AFFIRMED.

---

[10] Nothing in our holding should be construed as an opinion on whether the DOJ reasonable modifications regulation is appropriate or necessary for paratransit services. We simply hold that under the DOJ regulations and the statutory provision under which they were authorized, the reasonable modifications requirement of § 35.130(b)(7) is inapplicable to paratransit services. If the DOT determines that such a requirement may be desirable for paratransit services, it is, of course, free to address that issue during, for example, its rule-making processes.