**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, Plaintiff,**

v.

**LAW SCHOOL ADMISSION COUNCIL INC., et al., Defendants.**

**No. C–12–1830 EMC.**

United States District Court, N.D. California.

Sept. 18, 2012.

Susan Marie Saylor, Department of Fair Employment & Housing, Fremont, CA, Phoebe P. Liu, California Department of Fair Employment and Housing, Los Angeles, CA, Ruth Sybil Villanueva, Department of Fair Employment and Housing, Elk Grove, CA, for Plaintiff.

Julie Marie Capell, Robert Eugene Darby, Fulbright and Jaworski LLP, Los Angeles, CA, Caroline Mew, Robert A. Burgoyne, Fulbright and Jaworski L.L.P., Washington, DC, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (No. Docket No. 13).**

EDWARD M. CHEN, District Judge.

## I. *INTRODUCTION*

The California Department of Fair Employment and Housing (DFEH) filed suit

against the Law School Admission Council, Inc. (LSAC) seeking damages and injunctive relief over alleged failures of the Defendant to provide disability related accommodations to test-takers of the Law School Admission Test (LSAT) in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq. DFEH's Complaint (Docket No. 1, Ex. A) states that it brought this action both on behalf of seventeen named individuals and as a class action. Compl. ¶ 7–8. LSAC thereafter filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) asking this Court to dismiss Plaintiff's complaint in its entirety, or, alternatively, in substantial part. LSAC's arguments in support of its motion fall within five broad categories: (1) that DFEH lacks jurisdiction over the subject matter of this litigation, (2) that the claims asserted in DFEH's complaint fail to state a claim under Fed.R.Civ.P. 12(b)(6), (3) that certain requested money damages are unavailable as a matter of state law, (4) that certain class-based claims cannot be pursued as a matter of law because DFEH failed to follow proper administrative procedure at earlier stages in this litigation, and (5) that Doe defendants must be dismissed from the complaint because DFEH fails to plead any facts regarding their alleged actions or inactions. Having considered the parties' submissions and oral argument, the Court **GRANTS IN PART and DENIES IN PART** Defendant's motion for the reasons set forth below.

## II. *FACTUAL & PROCEDURAL BACKGROUND*

LSAC is a non-profit membership organization based in Pennsylvania that, among other things, administers the Law School Admissions Test (LSAT) to prospective law students. The LSAT is a standardized test that evaluates potential law school applicants on their acquired reading and verbal reasoning skills. Compl. ¶ 46. The test consists of a battery of five sections labeled as either reading comprehension, analytical reasoning, or logical reasoning. *Id.* ¶ 49. Each of these five sections consists of multiple-choice type questions, and test-takers are allotted thirty-five minutes to complete each section. *Id.* ¶ 47. The test also includes an unscored thirty-five minute written component, which LSAC forwards to law schools along with a test-taker's scores. *Id.*

DFEH's Complaint focuses on LSAC's practices in providing testing accommodations to test-takers who claim to be disabled. LSAC claims to conscientiously evaluate requests for testing accommodation to ensure that "individuals with *bona fide* disabilities receive accommodations, and that those without disabilities do not receive accommodations" which could provide them with an unfair advantage on the exam. Def's Motion (Docket No. 13) at 2 (quoting *Powell v. Nat'l Bd. of Med. Examiners,* 364 F.3d 79, 88–89 (2d Cir.2004)).

DFEH claims that LSAC's accommodations evaluation procedures include, among other things, requirements that testing candidates requesting extra time or other accommodations for a "cognitive or psychological impairment" submit to psychoeducational and neuropsychological testing, and provide a "full diagnostic report" that includes records of the candidates' aptitude and achievement testing. Compl. ¶ 54. DFEH also claims that LSAC requires applicants to disclose in an accommodations request whether or not they took prescribed medications during medical evaluations of their condition, and if not, to explain their failure to do so. *Id.* ¶ 55. According to LSAC, "more than a thousand individuals request disability-based accommodations on the LSAT very year, and LSAC grants accommodations to

most, but not all, of those individuals." Def's Motion (Docket No. 13) at 2.

DFEH also alleges that LSAC maintains a policy of "flagging" the LSAT exam scores of individuals who receive disability accommodations for extra time. Compl. ¶ 56. LSAC includes a notation on an accommodated individuals' score report that the score was achieved under nonstandard time constraints, and excludes extended-time scores when calculating its LSAT percentile rankings. *Id.* ¶¶ 56–57. As a consequence, the fact that an individual received extended-time on the LSAT is disclosed to all law schools receiving that individual's score report. *See Id.* ¶ 56. However, LSAC does advise schools that extended-time score reports "should be interpreted with great sensitivity and flexibility." *Id.* ¶ 56.

In 2010, DFEH received multiple written "verified complaints of discrimination" from individuals alleging that LSAC had denied them reasonable accommodations for their disabilities when taking the LSAT. *Id.* ¶ 19–20. These written complaints alleged that LSAC had unlawfully denied them "full and equal access to the LSAT" in violation of the California Fair Housing and Employment Act (FEHA) (Cal. Gov. Code §§ 12900 *et seq.*) and the Unruh Civil Rights Act (Cal. Civ. Code §§ 51 *et seq.*). Compl. ¶¶ 19–20. By virtue of its incorporation into the Unruh Act, a violation of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*) also constitutes a violation of the Unruh Act. Compl. ¶ 16; *see also* Unruh Act, Cal. Civ.Code § 51(f).

Upon receiving these complaints, DFEH began an investigation to ascertain whether LSAC's alleged denial of full and equal access affected a larger class of test-takers. *Id.* ¶ 21. On July 22, 2010, DFEH issued to LSAC a document titled "Notice of Class Action Complaint and Director's Complaint." *Id.* ¶ 22.; *See* Compl., Ex. 3. The notice defined the potentially affected class as "all disabled individuals in the State of California who have or will request an accommodation for the Law School Admission Test (LSAT), administered by the LSAC, and who have or will be unlawfully denied such request from January 19, 2009 to the conclusion of the Department's investigation of this complaint." *Id.* During its investigation, DFEH sought administrative discovery to determine the identities of other individuals in California who had been denied reasonable accommodations by LSAC during the period mentioned in the notice. *Id.* ¶ 23. Over LSAC's objections, DFEH obtained an order from a California Superior Court directing LSAC to respond to DFEH's discovery requests. *Id.*

As a result of its investigation and discovery, DFEH filed an administrative accusation before the California Fair Employment and Housing Commission on February 6, 2012, which LSAC elected to have transferred to the California Superior Court in Alameda County under Cal. Gov. Code § 12965(c)(1). Compl. ¶¶ 40–42. The administrative accusation, brought on behalf of seventeen individuals as a group, and as a class action on behalf of "all disabled individuals in the State of California who requested a reasonable accommodation for the Law School Admission Test (LSAT) from January 19, 2009 to February 6, 2012," charged LSAC with violations of the Unruh Act. *Id.* ¶¶ 7–8, 40. LSAC thereafter removed the matter from the Alameda County Superior Court to this Court on April 12, 2012, pursuant to 28 U.S.C. § 1441 on the basis of federal question jurisdiction and diversity jurisdiction.

DFEH's state court complaint advances the following five causes of action against LSAC for violations of the Americans with Disabilities Act:

(1) LSAC unlawfully considered mitigation measures in determining whether an impairment substantially limits a major life activity by requiring applicants for reasonable accommodations to take their prescribed medications while being evaluated, or to provide an explanation for a failure to do so, in violation of 42 U.S.C. § 12102(4)(E)(i)(I);

(2) LSAC's policy of flagging score reports of individuals receiving additional time failed to ensure that the LSAT measured aptitude, rather than disability, in violation of 42 U.S.C. § 12189 and 28 C.F.R. § 36.309;

(3) LSAC's flagging policy unlawfully coerced and discouraged potential applicants from seeking reasonable accommodations or punished those who received accommodations, in violation of 42 U.S.C. § 12203;

(4) LSAC breached its duty to make the LSAT accessible to disabled individuals by requiring excessive documentation and by denying reasonable accommodations, in violation of 42 U.S.C. § 12189 and 28 C.F.R. § 36.309(b)(1)(iv); and

(5) LSAC's policy of requiring excessive documentation to support accommodation requests coerced and discouraged potential applicants from seeking reasonable accommodations, in violation of 42 U.S.C. § 12203.

Compl. ¶¶ 187–216. DFEH brought the first three causes of action on behalf of all class members, while the fourth and fifth causes of actions were brought only on behalf of the seventeen named plaintiffs. *Id.*

LSAC filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). LSAC asserts five arguments for dismissal: (1) that DFEH lacks jurisdiction over the subject matter of this litigation, (2) that the claims asserted in DFEH's complaint fail to state a claim under Fed. R.Civ.P. 12(b)(6), (3) that certain requested money damages are unavailable as a matter of state law, (4) that certain class-based claims cannot be pursued as a matter of law because DFEH failed to follow proper administrative procedure at earlier stages in this litigation, and (5) that Doe defendants must be dismissed from the complaint because DFEH fails to plead any facts regarding their alleged actions or inactions.

Aside from the Plaintiff's and Defendant's briefs on this motion, two additional non-parties to this litigation have filed materials with the Court regarding LSAC's motion: the Legal Aid Society–Employment Law Center (LAS–ELC) and the United States Department of Justice (DOJ), which filed a Statement of Interest in this matter pursuant to 28 U.S.C. § 517.

### III. *DISCUSSION*

#### A. *Legal Standard—Motion to Dismiss*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R.Civ.P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir.2009). Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

*Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

At issue in a 12(b)(6) analysis is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims" advanced in his or her complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). While "a complaint need not contain detailed factual allegations ... it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Cousins,* 568 F.3d at 1067 (9th Cir.2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. at 556, 127 S.Ct. 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

In ruling on a motion to dismiss, a court may look to documents whose contents are specifically alleged as part of a complaint, even though the plaintiff did not append them to the complaint. Although generally "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion," "material which is properly submitted as part of the complaint may be considered" on such a motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). A "document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994) *overruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir.2002) (citing *Townsend v. Columbia Operations,* 667 F.2d 844, 848–49 (9th Cir.1982)). "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Id.* at 454.

In the context of a motion under Rule 12(b)(1) for lack of jurisdiction, the district court has greater flexibility. "When considering a motion to dismiss for lack of subject matter jurisdiction, the district court may properly review evidence outside the pleadings to resolve factual disputes concerning the existence of jurisdiction." *Wilson–Combs v. California Dept. of Consumer Affairs,* 555 F.Supp.2d 1110, 1114 (E.D.Cal.2008) (citing *Land v. Dollar,* 330 U.S. 731, 735 Fn. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)).

### B. *Jurisdiction of DFEH*

DFEH is a California state agency responsible for enforcing the state's civil rights laws. It derives its enforcement authority from California's Fair Employment and Housing Act (FEHA), Cal. Gov. Code, § 12900 *et seq.,* wherein DFEH is granted, among other authorities, the power to "receive, investigate, and conciliate complaints" of discrimination not only in employment matters under § 12940 (*see* § 12930(f)(1)), but also in discrimination cases that fall within the scope of California's Unruh Civil Rights Act. Cal. Gov't Code § 12930(f). In addition, FEHA substantively incorporates the Unruh Act, as § 12948 declares it "an unlawful practice under this part for a person to deny or to aid, incite or conspire in the denial of the rights created by Section 51, 51.5, 51.7, 54, 54.1, or 54.2 of the Civil Code." Cal. Gov't Code § 12948.

The Unruh Civil Rights Act, in turn, states that all persons within the State of California are "entitled to the full and equal accommodations, advantages, facili-

ties, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). In addition, the Unruh Act expressly incorporates the Americans with Disabilities Act by providing that a "violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101–336) ("ADA") shall also constitute a violation of this section." Cal. Civ. Code § 51(f).

Section 12189 of the ADA contains a specific provision addressing disability access and accommodations in the context of standardized testing. The ADA directs that "any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189.

Thus under FEHA, DFEH has jurisdiction to investigate ADA violations in the State of California, including § 12189 of the ADA via its enforcement of § 51 of the Unruh Civil Rights Act.

LSAC's motion challenges DFEH's statutory authority to investigate or file complaints involving accommodation requests on standardized admissions tests, and to pursue claims of disability discrimination that are not first alleged in a verified complaint received by the agency. LSAC argues that (1) DFEH lacks statutory jurisdiction to assert claims for disability discrimination that are not expressly created under § 51 of the California Civil Code, see Def's Motion at 8–10, and (2) that a proper reading of DFEH's jurisdiction under California law limits its investigatory and prosecutorial authority solely to claims expressly raised in a verified complaint received by the agency, see Def's Motion

at 10–12. At oral argument, LSAC questioned further whether the Unruh Act's incorporation of the "Americans with Disabilities Act of 1990 (P.L. 101–336)," see Cal. Civ. Code § 51(f), limits DFEH's derivative jurisdiction via the Unruh Act to only those provisions of the ADA that existed in 1992 at the time of its incorporation into state law, see 1992 Cal. Legis. Serv. Ch. 913 (A.B. 1077) §§ 1, 3. This last argument challenges, in essence, whether DFEH can enforce amendments to the ADA in its suit against LSAC.

### 1. Rights 'Created' Under § 51

■ LSAC argues that DFEH lacks statutory jurisdiction to assert claims for disability discrimination that are not expressly "created" under § 51 of the California Civil Code. In particular, LSAC argues that the FEHA limits DFEH's scope of authority to "rights *created* by Section 51 ... of the Civil Code." *Id.* at 8 (citing Cal. Gov't Code § 12948). Inasmuch as ADA violations are incorporated into § 51 by virtue of subsection (f), which expressly makes a "violation of the right of any individual under the federal Americans with Disabilities Act of 1990" also violative "of this section," they are not according to LSAC *"created"* by Section 51 and thus fall outside the scope of DFEH's enforcement authority. *Id.* at 9 (emphasis added). LSAC's reading of FEHA is unpersuasive.

First, the rights encompassed by § 51 are in common parlance "created" by that provision. Whether the rights are explicitly enumerated in § 51 or incorporated by reference pursuant to its terms, § 51 accords them legal status, brings them into existence, and thus "creates" them. *See* American Heritage Dictionary, 3rd Edition, p. 438 (1992) (defining "create" as "To cause to exist; bring into being"); www.merriam-webster.com/dictionary/create ("create" defined as "to bring into exis-

tence.") Thus, under the California Constitution, the California Legislature *created* the rights encompassed by § 51 when it enacted that section into law.

Second, it makes no logical or policy sense why the DFEH would be empowered to enforce some rights encompassed by § 51 (*i.e.,* those under 51(b))[1] and not others (those under 51(f)). Indeed, it would be contrary to the general legislative intent behind the Unruh Act's incorporation of the ADA. More than fifteen years before the enactment of the federal ADA, the California Legislature in 1977 amended the Fair Employment Practices Act to include physical handicap as a prohibited basis for discrimination. *See* former Cal. Labor Code § 1420(a) (repealed by Stats. 1980, c. 992, p. 3166, § 11). That same year, the California Legislature declared that "[i]t is the policy of this state to encourage and enable individuals with a disability to participate fully in the social and economic life of the state." Cal. Gov't Code § 19230 (added by Stats. 1977, c. 1196, p. 3977, § 2). Nineteen years later, in response to the passage of the federal ADA, California amended the Unruh Act as part of omnibus legislation designed to "strengthen California law where it is weaker than the ADA and to retain California law when it provides more protection than the ADA." *See* Stats. 1992, ch. 913, § 1 (AB 1077) and Assembly Judiciary Committee, AB 1077 (Jan. 22, 1992), at 2. In addition, such a narrow interpretation of the Unruh Act contravenes the directive of the California Supreme Court to construe that law liberally. In *Munson v. Del Taco, Inc.,* 46 Cal.4th 661, 669, 94 Cal. Rptr.3d 685, 208 P.3d 623 (2009), the California Supreme Court stated "with regard to the Unruh Civil Rights Act ... that it must be construed liberally in order to carry out its purpose to create and preserve a nondiscriminatory environment in California business establishments by 'banishing' or 'eradicating' arbitrary, invidious discrimination by such establishments." *Id.* at 666, 94 Cal.Rptr.3d 685, 208 P.3d 623 (citing *Angelucci v. Century Supper Club,* 41 Cal.4th 160, 167, 59 Cal.Rptr.3d 142, 158 P.3d 718 (2007)).

Furthermore, the DFEH interprets FEHA as conferring upon it jurisdiction to enforce the ADA as it is incorporated into the Unruh Act; the enforcing agency's interpretation is entitled to some weight. As observed in *Giles v. Horn,* 100 Cal. App.4th 206, 123 Cal.Rptr.2d 735 (2002):

Additionally, "[w]hile the ultimate interpretation of a statute is an exercise of the judicial power [citation], when an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great respect by the courts 'and will be followed if not clearly erroneous.'" *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668–669, 150 Cal.Rptr. 250, 586 P.2d 564 (*Judson Steel*), quoting *Bodinson Mfg. Co. v. California E.Com.* (1941) 17 Cal.2d 321, 325–326, 109 P.2d 935. Courts find administrative interpretations of a law to be "significant factors in ascertaining statutory meaning and purpose. [Citations.]" *Nipper v. California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45, 136 Cal.Rptr. 854, 560 P.2d 743.

---

1. Section 51(b) of the Unruh Civil Rights Act states that "all persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

*Giles,* 100 Cal.App.4th at 220–21, 123 Cal. Rptr.2d 735. See *Rodriguez v. Airborne Express,* 265 F.3d 890, 898 (9th Cir.2001) ("We accord great respect to the Commission's interpretation of its authority and will follow it unless it is clearly erroneous.").[2]

In support of its narrow reading of FEHA, LSAC relies solely on *Turner v. Ass'n of American Medical Colleges,* 167 Cal.App.4th 1401, 85 Cal.Rptr.3d 94 (2008). LSAC reads the *Turner* decision as holding that the rights 'created' by § 51 of the Unruh Act are limited to the rights enumerated in § 51(b), and do not include any ADA-based rights incorporated into the Unruh Act through subsection (f). *See* Def's Motion at 8; Def's Reply (Docket 30) at 2. LSAC's reading of *Turner* not only misstates the court's holding in that case, but also ignores the court's explicit finding that a violation of the ADA can also constitute a violation of the Unruh Act. In *Turner,* plaintiffs challenged "certain standards for the administration of the Medical College Admission Test (MCAT), including a time limit for each section of the test," which were "neutral and extend to all applicants regardless of their membership in a particular group." 167 Cal.App.4th at 1409, 85 Cal.Rptr.3d 94. Importantly, the plaintiffs in *Turner* claimed that their request for accommodations for more time and/or a private room "should have been considered under [California] state laws, which define disability more broadly than the ADA to include a mental, psychological or physical condition that limits a major life activity, i.e., that makes the achievement of the major life activity difficult."

*Id.* (internal citations and quotations omitted). Plaintiffs did *not* premise their claims on violations of the ADA as incorporated into the Unruh Act through operation of § 51(f), as Plaintiffs in the instant case do. Instead, plaintiffs' claim in *Turner* were based solely on rights covered by § 51(b). *Turner* found that because the limiting language in § 51(c) restricts the scope of § 51(b) from applying to "practices and policies that apply equally to all persons," plaintiffs could not base their complaint over the denial of reasonable accommodation on § 51(b) of the Act.[3] *Id.* at 1408, 85 Cal.Rptr.3d 94.

Since *Turner* did not base its ruling on a construction of § 51(f) of the Unruh Act, the court stated its holding "does not mean that disabled persons in California may not seek reasonable accommodations for their learning and reading-related disabilities when taking a standardized test." *Id.* at 1410, 85 Cal.Rptr.3d 94. Quite to the contrary, *Turner* expressly held that "the Unruh Act *does* indirectly penalize a failure to grant reasonable accommodations in Civil Code section 51, subdivision (f), which incorporates otherwise relevant ADA standards as a floor under state law," and, thus, "a violation of the right of any individual under the Americans with Disabilities Act of 1990" would "also constitute a violation of this section." *Id.* (emphasis in original). In such a case:

> Civil Code section 51, subdivision (c) and the cases construing it can be readily harmonized with section 51, subdivision (f) and the ADA provisions it incorporates. Simply put, in addressing a claim

---

**2.** To be sure, the degree of deference to the agency's interpretation may arguably be lessened where that interpretation is not formally codified in a regulation.

**3.** Section 51(c) states "this section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation or to persons regardless of their genetic information." Cal. Civ. Code § 51(c).

that a facially neutral testing policy has a disparate impact on persons with learning and reading-related disabilities, accommodations are required to the extent they are required under the ADA. *Turner*, 167 Cal.App.4th at 1410, 85 Cal. Rptr.3d 94.

Thus, the *Turner* decision did *not* conclude that the rights 'created' by § 51 are limited to those listed in subsection (b) of the Act. It simply held that § 51(c) restricted the scope of rights under § 51(b) but recognized that § 51(f)—incorporating those rights protected by the ADA—provided an independent source of protection.

The LSAC has failed to prove that DFEH lacks jurisdiction under § 51(f) of the Unruh Act to pursue violations of the ADA.

2. *Unruh Act Violations Limited to Subject Matter of FEHA*

■ LSAC further argues that DFEH's jurisdiction to pursue Unruh Act violations is limited to matters that involve the original subject matter of FEHA. *See* Def's Motion at 10. LSAC maintains that FEHA's original subject matter is limited to employment and housing discrimination, and neither of these encompasses standardized tests. *See id.* It argues in the alternative that the California Legislature intended to incorporate into the Unruh Act "only those provisions of the ADA germane to the original scope of those state laws." *See id.* (citing *Bass v. County of Butte*, 458 F.3d 978, 982 (9th Cir.2006)). In support of this latter argument, LSAC cites to *Anderson v. County of Siskiyou*, 2010 WL 3619821, at *6 (N.D.Cal. Sept. 13, 2010), where a court held that the Unruh Act did not incorporate ADA claims that could be brought against a jail since the jail lacked the attributes of a business and would not qualify as a "business establishment" under the terms of the Act. Under either theory, LSAC argues, DFEH lacks jurisdiction to pursue ADA claims regarding standardized testing. Neither of these arguments stands up to scrutiny.

As discussed above, the California legislature amended the Unruh Act in 1992 to explicitly incorporate rights guaranteed under the federal ADA. That incorporation under § 51(f) contains no exclusion of the ADA as it affects public accommodations. The purpose of this amendment was to "conform state anti-discrimination laws with the provisions of the Americans with Disabilities Act." *Bass v. County of Butte*, 458 F.3d 978, 981 (9th Cir.2006) (citing Assem. Off. of Research, 3d reading analysis, A.B. 1077 (Cal. 1992 Reg. Sess.)). Indeed, more to the point, the Unruh Act prohibits a range of discriminatory practices with respect to public accommodations. Charged with enforcement of the Unruh Act, the DFEH obviously has jurisdiction to enforce anti-discrimination rights beyond matters of employment and housing. While "California courts have, historically, rejected attempts by plaintiffs to expand the scope of the Unruh Act to include employment claims," *Bass*, 458 F.3d at 981, here the rights at issue fall squarely within the historical arena of the Unruh Act and are "germane to the statutes' original subject matter." *See Id.* at 980, 983.

Furthermore, the California Fair Employment and Housing Commission ("Commission") has held in *Dep't Fair Empl. & Hous. v. Univ. Of Cal. Berkeley*, 1993 WL 726830, at *11, that neither Government Code § 12930 nor § 12948 contain "any limitation on the kinds of Unruh Act violations that may be addressed administratively under the FEHA, and the obvious conclusion is that no such limitation was intended." *Id.* at *10. The statute's provisions are to be "construed liberally for the accomplishment of [its] purposes," Cal.

Gov't. Code § 12993, and courts generally "accord great respect to the Commission's interpretation of its authority and will follow it unless it is clearly erroneous," *Rodriguez v. Airborne Express*, 265 F.3d 890, 898 (9th Cir.2001).

Accordingly, the DFEH has jurisdiction under the Unruh Act to enforce Title III violations of the ADA, including rights thereunder with respect to standardized testing.[4]

### 3. *ADA Incorporation into the Unruh Act*

■ At oral argument, the parties disagreed over whether § 51(f) of the Unruh Act incorporates the ADA as it currently exists in federal law, or only as it existed in 1992 when the Legislature enacted § 51(f). Having reviewed the supplementary briefing materials, the Court concludes that the Unruh Act incorporates the ADA not only as it currently exists, but also as it "may be changed from time to time." *Palermo v. Stockton Theatres*, 32 Cal.2d 53, 59, 195 P.2d 1 (1948).

Section 51(f) states that a "violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101–336) shall also constitute a violation of this section." Since its initial passage in 1990, the ADA has been amended at least five times. *See* Pub. L. 102–166, Nov. 21, 1991, 105 Stat. 1071; Pub. L. 104–1, Jan. 23, 1995, 109 Stat. 8; Pub. L. 104–59, Nov. 28, 1995, 109 Stat. 608; Pub. L. 104–287, Oct. 11, 1996, 110 Stat. 3400; Pub. L. 110–325, Sept. 25, 2008, 122 Stat.

3554. The last of these amendments introduced several changes to the ADA, including changes to the definition of the term 'disability.' *See Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 861 (9th Cir.2009) (the 2008 amendments "explicitly reject[ ] several Supreme Court decisions that defined 'disability' more narrowly than many of the ADA's original Congressional proponents had intended"). Both parties cite *Palermo v. Stockton Theatres* as the lead case for determining the scope of the ADA's incorporation into the Unruh Act, including the applicability of these latter ADA amendments to § 51(f).

In *Palermo*, the California Supreme Court set out a standard for distinguishing among state laws that incorporate other statutes by reference. "[W]here a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified." *Palermo v. Stockton Theatres*, 32 Cal.2d at 58–59, 195 P.2d 1. In contrast, "where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time." *Id.* at 59, 195 P.2d 1. While § 51(f) refers specifically to the original ADA's public law number, the broad scope of the ADA, even as it existed in 1990, counsels in favor of the broader prong of *Palermo*.[5] *See* Americans with

---

**4.** "Title III of the ADA prohibits discrimination on the basis of disability by public accommodations, commercial facilities, and private entities that offer examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes." Statement of Interests of

the United States of America (Docket No. 29) at 2 (citing 42 U.S.C. § 12181 *et. seq.,* and 28 C.F.R. §§ 36.102 and 36.201).

**5.** It should be noted that under California law a citation to a specific legal provision does not necessarily render that incorporation a "specific reference" under *Palermo. See e.g. In re Jovan B.*, 6 Cal.4th at 816, 25 Cal.

Disabilities Act of 1990, P.L. 101–336,104 Stat. 327, § 2(b)(1) ("It is the purpose of this Act [ ] to provide a clear and *comprehensive* national mandate for the elimination of discrimination against individuals with disabilities") (emphasis added).

█ In any event, subsequent California Supreme Court decisions have clarified that, as here, "when the statutory words themselves do not make clear whether the statute contemplates only a time-specific incorporation, the determining factor will be legislative intent." *People v. Anderson,* 28 Cal.4th 767, 779, 122 Cal.Rptr.2d 587, 50 P.3d 368 (2002) (quoting *In re Jovan B.,* 6 Cal.4th 801, 816, 25 Cal.Rptr.2d 428, 863 P.2d 673 (Cal.1993)). *See also People v. Domagalski,* 214 Cal.App.3d 1380, 1386, 263 Cal.Rptr. 249 (Cal.Ct.App.1989) ("in cases where it is questionable whether only the original language of a statute is to be incorporated or whether the statutory scheme, along with subsequent modifications, is to be incorporated, the determining factor will be the legislative intent behind the incorporating statute."); *People v. Pecci,* 72 Cal.App.4th 1500, 1505, 86 Cal.Rptr.2d 43 (1999) ("the *Palermo* rule is not to be applied in a vacuum. The determining factor is legislative intent.") (citing *In re Jovan B.,* 6 Cal.4th at 816, 25 Cal. Rptr.2d 428, 863 P.2d 673).

Here, it is evident that the California Legislature intended to incorporate the ADA as a "system or body of laws," including evolving changes. The systemic nature of the laws incorporated is evidenced by the general principle that animated the Legislature: "It is the intent of the Legislature in enacting this act to strengthen

California law in areas where it is weaker than the Americans with Disabilities Act of 1990 (Public Law 101–336) and to retain California law when it provides more protection for individuals with disabilities than the Americans with Disabilities Act of 1990." *Munson v. Del Taco, Inc.,* 46 Cal.4th 661, 669, 94 Cal.Rptr.3d 685, 208 P.3d 623 (2009) (quoting Stats. 1992, ch. 913, § 1, p. 4282). *See also* Cal. Gov't Code § 12926(1)(a). Indeed, the Ninth Circuit held in *Lentini v. California Ctr. for the Arts, Escondido* that "the Unruh Act has adopted the full expanse of the ADA." 370 F.3d 837, 847 (9th Cir.2004) (citing with approval *Presta v. Peninsula Corridor Joint Powers Bd.,* 16 F.Supp.2d 1134, 1135 (N.D.Cal.1998)). Importantly, *Lentini* was decided after four of the five post–1990 ADA amendments had already been enacted.

The Court, therefore, finds that § 51(f) of the Unruh Act incorporates by reference the whole of the federal ADA "not only in [its] contemporary form, but also as [it] may be changed from time to time." *Palermo,* 32 Cal.2d at 59, 195 P.2d 1.

## C. Limits to DFEH's Authority Based on Underlying Complaints

█ LSAC also challenges DFEH's ability to bring the specific ADA causes of action advanced in its complaint for essentially failure to exhaust. LSAC argues that a proper reading of DFEH's jurisdiction under California law limits its investigatory authority solely to those claims that were expressly raised in verified complaints received by the agency. *See generally* Def's Motion at 10–12. Implicit within DFEH's authorizing statutes, argues

Rptr.2d 428, 863 P.2d 673 (citation in Cal. Welf. & Inst. Code § 726 to specific sections of the California Penal Code was an incorporation of a system or body of laws, including subsequent amendments); *People v. Van Buren,* 93 Cal.App.4th 875, 878–79, 113 Cal.

Rptr.2d 510 (2001) *overruled on other grounds by People v. Mosby,* 33 Cal.4th 353, 15 Cal. Rptr.3d 262, 92 P.3d 841 (2004) (citation to Cal. Penal Code § 667.5 "incorporated the contemporaneous version ... along with subsequent amendments").

LSAC, lies an important limitation that "DFEH cannot challenge actions or policies in a post-conciliation accusation" that (1) "were not first identified in a verified complaint to the agency," (2) "cannot reasonably be expected to grow out of DFEH's investigation of the allegedly unlawful conduct," and (3) "were not the subject of good faith conciliation efforts by DFEH." Def's Motion at 12. In this case, Defendant argues that "none of the Complainants alleged any ADA violation," and "none of the Complainants alleged that LSAC's flagging policy or any of its documentation policies are unlawful." *Id.* It contends, because these issues were not specifically raised by the Complainants, "it was therefore improper for DFEH to include in the Complaint *any* ADA-based claim." *Id.* This argument fails to recognize the wide investigative latitude afforded DFEH under California law, and the notice of the content of the complaints given to LSAC prior to the initiation of its enforcement action.

California's Fair Employment and Housing Act empowers DFEH "to receive, investigate, and conciliate complaints" that allege violations of law within the scope of its jurisdiction. Cal. Gov't Code § 12930(f). The Act contains a specific procedure for DFEH to use in investigating a complaint. Broadly speaking, the act allows "any person claiming to be aggrieved by an alleged unlawful practice" to "file with the department a verified complaint" setting "forth the particulars" of "the unlawful practice complained thereof." Cal. Gov't Code § 12960(b). In situations where "an unlawful practice alleged in a verified complaint adversely affects, in a similar manner, a group or class of persons ... the aggrieved person or the director may file the complaint on behalf and as representative of such a group or class." Cal. Gov't Code § 12961. Upon receiving "any complaint alleging facts sufficient to

constitute a violation of any of the provisions of this part," DFEH is directed to "make [a] prompt investigation." Cal. Gov't Code § 12963. If DFEH determines that the "complaint is valid, the department shall immediately endeavor to eliminate the unlawful ... practice complained of by conference, conciliation, and persuasion." Cal. Gov't Code § 12963.7. If this non judicial reconciliation process fails to resolve the complaint, DFEH may issue a "written accusation" and require "the respondent to answer the charges at a hearing." Cal. Gov't Code § 12965. As with all other aspects of the Fair Employment and Housing Act, the investigatory and adjudicatory procedure is to be "construed liberally for the accomplishment of the purposes of [the Act]." Cal. Gov't Code § 12993(a).

Construing DFEH's statutory scheme broadly, the Ninth Circuit has held that claims not originally brought in verified complaints may nonetheless be brought in subsequently when they are "like or reasonably related to" the initial allegations. *Rodriguez v. Airborne Express, supra,* 265 F.3d at 897. Adopting a 'relation-back' theory as articulated by the Fifth Circuit in *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir.1970), the Ninth Circuit in *Rodriguez* held that new accusations of wrongdoing could be added later to a DFEH complaint "on the principle that the proper scope of the charge is determined by facts alleged in the original complaint, not the legal theory originally attached to those facts." *Rodriguez,* 265 F.3d at 899. In that case, however, the court rejected an argument that a complainant's new claim of "disability discrimination may properly be related back to his original complaint alleging discrimination on the ground that [he] was Mexican–American." *Id.* The court held that while "factual allegations of the original com-

plaint, rather than the legal theory, establish the proper boundaries of the charge," those initial "factual allegations must be able to bear the weight of the new theory added by amendment." *Id.*

In the instant case, each of the Complainants' recitation of the facts in their claims makes quite clear that they wish to challenge LSAC's conduct on the basis of disability discrimination. That the verified complaints received by DFEH did not explicitly identify the ADA as the legal basis of their theories for recovery is not dispositive since it is the "factual allegations of the original complaint, rather than the legal theory" that controls. *Rodriguez*, 265 F.3d at 899. Thus, in light of the standard set by the court in *Rodriguez*, LSAC's argument that it was improper "for DFEH to include in the Complaint any ADA-based claim" cannot be accepted. *See* Mot. to Dismiss at 12. Nor can it be maintained that, on the basis of the facts alleged in the verified complaints, "it was improper for DFEH to include claims that challenge the guidance that LSAC provides to professionals who submit evaluations in support of an accommodation request," or to include claims challenging "LSAC's documentation requirements for individuals requesting accommodations," Def's Motion at 12. The record demonstrates quite clearly that the original verified complaints received by DFEH challenged, at least in part, LSAC's allegedly discriminatory documentation procedures. *See* Compl., Ex. 2 (Verified Complaint of Nicholas Jones) (alleging a denial of reasonable accommodations because of disability in connection with LSAC's documentation requirements); Compl. ¶ 148 ("Mr. Quan contested LSAC's need for additional documentation, asserting that it was unnecessary, unaffordable, and burdensome."), ¶¶ 182–183 (challenging relevance of LSAC's Guidelines for Documentation of Cognitive Impairments).

■ LSAC asserts that a discrimination claim involving someone who has been denied reasonable accommodations on the LSAT is not "like or reasonably related to" a discrimination claim by someone who received accommodations and objects to LSAC's "flagging" policy. That argument also lacks merit. The relationship between denying individuals accommodations on the LSAT and discriminating against disabled individuals by "flagging" their test scores is not as attenuated as discrimination claims previously held not "reasonably related" by the courts. *See e.g. Rodriguez*, 265 F.3d at 898 (holding that plaintiff's original complaint with the DFEH alleging race-based discrimination could not be extended to include disability discrimination); *Winter v. Corrections Corp. of America*, 2009 WL 1796309, at *4 (S.D.Cal. Jun. 24, 2009) (holding that plaintiff's claims about disability were not like or reasonably related to race/color-based discrimination). The ADA claims alleged by DFEH all fall within the general scope of the claim that Defendant failed to provide reasonable accommodations to test-takers of a standardized exam. Flagging an individual's test results because they received some form of testing accommodations could constitute a *de facto* denial of accommodations to the extent that flagging results in the LSAT not being offered "in a place and manner accessible to persons with disabilities." 42 U.S.C. § 12189. Likewise, to the extent that flagging erects a *de facto* barrier to applicants receiving accommodations because it "intimidate[s] them not to request accommodations" or "punishes them for doing so," that also amounts to an allegation that LSAC's practice discriminates against disabled test takers on account of their disability. *Breimhorst v. Educ. Testing Serv.*, 2000 WL 34510621 (N.D.Cal. Mar. 27, 2000). Unlike the

claims advanced in *Rodriguez* and *Winter*, the claims in Plaintiff's state court complaint have not markedly shifted from one type of discriminatory behavior (*e.g.* on the basis of race) to another (*e.g.* on the basis of disability). Rather, all five claims advanced by DFEH involve the same kind of improper conduct—the denial of reasonable accommodations on a standardized test on account of disability. This is enough to satisfy the "like or reasonably related standard" set out in *Rodriguez*.

■ LSAC's final challenge to DFEH's ability to bring the specific ADA causes of action advanced in its complaint flows from FEHA's "conciliation" provision. Cal. Gov't Code § 12963.7 provides that where DFEH determines that a "complaint is valid, the department shall immediately endeavor to eliminate the ˙unlawful ... practice complained of by conference, conciliation, and persuasion." LSAC's motion argues that DFEH failed engage in good faith conciliation as required by statute, and as a consequence cannot issue a written accusation without first exhausting that requirement. Def's Motion at 12. This argument is unsupported by the language of FEHA, the cases interpreting it, and the facts of this case.

The use of the permissive word *endeavor* in § 12963.7, on its face, undercuts any reading of this section that would impose conciliation as a necessary prerequisite to issuing a written accusation. Cal. Gov't Code § 12965(a), which states that "[i]n the case of failure to eliminate an unlawful practice under this part through conference, conciliation, or persuasion, *or in advance thereof if circumstances warrant,* the director in his or her discretion may cause to be issued in the name of the department a written accusation," also indicates that conciliation is not required in every case. *Id.* (emphasis added).

Further, in both *Motors Ins. Corp. v. Div. of Fair Employment Practices,* and *DFEH v. Hoag Memorial Hospital Presbyterian,* the California Court of Appeal and the Fair Employment and Housing Commission have confirmed that conciliation under FEHA is not a condition precedent to filing suit. *See Motors Ins. Corp. v. Div. of Fair Employment Practices,* 118 Cal.App.3d 209, 224, 173 Cal. Rptr. 332 (Cal.Ct.App.1981) (DFEH is able "to file an accusation within the statutorily prescribed time even if it has not obtained optimum results from its investigation or its efforts at conciliation"); In the Matter of the Accusation of the *Department of Fair Employment and Housing v. Hoag Memorial Hospital Presbyterian,* Case No. FEP82–83 K9–011 se L–3046985–10, 1985 WL 62889 at *8 (Aug. 1, 1985) ("Neither is there any jurisdictional requirement that the Department, in each instance, engage in conciliation efforts, formally or informally, before issuing an accusation.").

Finally, the Court notes that DFEH did in fact engage in a day-long conciliation meeting on February 3, 2012, where it "presented LSAC with a detailed settlement demand which included notice of all the unlawful policies that the DFEH intended to pursue, including the issues of mitigation, annotation or flagging, and excessive documentation." Declaration of Susan Saylor (Docket No. 40, Ex. 1) ("Saylor Decl.") ¶ 11. The Court, therefore, rejects LSAC's argument that the "conciliation" provision in § 12963.7 deprives DFEH of jurisdiction to pursue its complaint in this matter.

D. *First Cause of Action*

DFEH's First Cause of Action states that LSAC violated the rights of class members under FEHA, the Unruh Act, and the ADA "by requiring applicants to

take the medications prescribed for their disabilities while being evaluated for accommodations or explain their failure to do so." Compl. ¶¶ 187–192. This requirement, they argue, violates the ADA's directive that "determination[s] of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as ... medication." [6] 42 U.S.C. § 12102(4)(E)(i)(I).

LSAC, in turn, argues that DFEH's First Cause of Action fails to state a claim under Rule 12(b)(6) for two reasons. First, LSAC asserts that "the language relied upon by DFEH is simply a rule of construction that courts are to use in determining whether someone is disabled within the meaning of the ADA." Def's Motion at 14. Under it, no "private right of action" exists such that the Defendant could "be separately sued for violating the ADA's definition of disability." *Id.* (internal quotation marks omitted). Second, LSAC contends that DFEH's claim is "based upon an incorrect factual premise." *Id.* Contrary to Plaintiffs' allegations, LSAC asserts that it never "require[d]" individuals who requested accommodations to "take the medications prescribed for their disabilities while being evaluated for accommodations or explain their failure or refusal to do so." *Id.* Rather, LSAC "simply suggests" that professional evaluators of these applicants conduct their evaluations while the applicants are taking their medications on the assumption that the applicant would be taking the same medication while sitting for their LSAT exam. *Id.* If an evaluator chooses not to examine an applicant while they are taking their medications, LSAC "simply asks the evaluator to provide an explanation" of that

decision. *Id.* These two arguments will be addressed in turn.

### 1. *No Private Right of Action*

■ In support of its assertion that there is no private right of action for "the definition of disability" violation because the text of the statute grants no such remedy, LSAC cites *Cort v. Ash,* 422 U.S. 66, 78–85, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (discussing relevant factors in determining whether a private remedy is implicit in a statute not expressly providing one), *Northstar Fin. Advisors, Inc. v. Schwab Investments,* 615 F.3d 1106, 1115–22 (9th Cir.2010) (discussing whether there is a private right to enforce § 13(a) of the Investment Company Act of 1940), and *In re Digimarc Corp. Derivative Litig.,* 549 F.3d 1223, 1229–33 (9th Cir.2008) (reviewing whether district court erred in determining that provision of the Sarbanes—Oxley Act does not contain a private right of action). These cases generally discuss how to determine whether a statute implicitly provides for a private right of action when the statutory text does not expressly grant such a remedy. LSAC's argument is meritless for several reasons.

First, it is undisputed that FEHA authorizes the DFEH to enforce the Unruh Act. *See* Cal. Gov. Code § 12930. As noted above, the Unruh Act incorporates the substantive standards of the ADA and creates a private right of action as a matter of state law. Whether the ADA itself provides a private cause of action under federal law does not affect enforcement of the Unruh Act—a state statute governed by its own enforcement mechanism.

Second, even if the analysis here were governed by the existence of a right of action directly under the ADA, LSAC's argument lacks merit. There is no need to

---

**6.** "A physical or mental impairment that substantially limits one or more major life activities" constitutes a disability under the ADA. 42 U.S.C. § 12102(1)(A).

imply a private right of action under *Cort v. Ash* because the ADA explicitly provides for a private right of action under § 12188(a)(1). That statute provides "remedies ... to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter." LSAC makes no convincing argument why the rights guaranteed under § 12189 are not enforceable under § 12188(a)(1).

Instead, LSAC seems to argue that § 12102(4)(E)(i)(I) which broadened the definition of "disability" under the ADA is merely definitional and does not provide a basis for a private right of action. LSAC misconstrues the gravamen of DFEH's complaint.

Title III of the ADA states that "any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. "The purpose of this section is to assure that persons with disabilities are not foreclosed from educational, professional, or trade opportunities because an examination or course is conducted in an inaccessible site or without an accommodation." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1160 (9th Cir. 2011) *cert. denied,* —— U.S. ——, 132 S.Ct. 366, 181 L.Ed.2d 232 (2011) (quoting H.R.Rep. No. 101–485(III), at 68–69 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 491–92.). Proof of a violation of § 12189 and the right to an accommodation thereunder first turns on the threshold question of whether the complainant is a person with a "disability." *See Agranoff v. Law Sch. Admission Council, Inc.*, 97 F.Supp.2d 86, 87 (D.Mass.1999) ("The

Americans With Disabilities Act (ADA) specifically requires private organizations that offer educational examinations to make them available in a manner accessible to persons with disabilities.") (internal quotation marks omitted). "Disability" is defined in § 12102 as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). In 2008, the United States Congress enacted the ADA Amendments Act of 2008 (ADA Amendments), Pub. L. 110–325, and broadened the definition of "disability" by providing that the "determination of whether an impairment substantially limits a major life activity shall be made *without* regard to the ameliorative effects of mitigating measures such as ... *medication.*" § 12102(4)(E)(i)(I) (emphasis added). Requiring applicants to take prescribed medication while being evaluated for accommodations does not simply contravene a definition; it can have the legal effect of erroneously and wrongfully denying an applicant the legal status of a person with a disability, and thereby deprive them of the right to accommodations to which he or she would otherwise be entitled under § 12189. Hence, the alleged conduct of LSAC not only contravenes the definition of disability under § 12102(4)(E)(i)(I); it can cause the deprivation of substantive rights under § 12189.

### 2. *Incorrect Factual Premise*

■ Turning to LSAC's charge that this First Cause of Action should be dismissed for failure to state a claim under Fed. R.Civ.P. 12(b)(6) because it is "based upon an incorrect factual premise," the Court finds this argument to be unfounded. *See* Def's Motion at 14. As noted above, LSAC denies that it requires individuals seeking testing accommodations to take their prescribed medicines while being evaluated for accommodations or explain their failure to do so. *See id.* at 14; Def's

Reply at 7. LSAC's argument reduces to a dispute over evidentiary facts. When considering a motion to dismiss under Rule 12(b)(6), "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir.2008). DFEH supported its First Cause of Action with well-pleaded facts in the complaint. It alleges, among other things, that LSAC requires applicants to disclose in an accommodations request whether or not they took prescribed medications during medical evaluations of their condition, and if not, to explain their failure to do so. *See* Compl. ¶ 55. LSAC counters this allegation with an invitation to view certain documents on its website; an invitation which the Court declines to take at the 12(b)(6) stage. As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001). There are two exceptions to this general rule for materials that the "plaintiff's complaint necessarily relies on" whose "authenticity ... is not contested," and materials that are of "public record." *Id.* at 688–689. Neither exception applies to LSAC's website. As such, LSAC's motion to dismiss DFEH's First Cause of Action is **DENIED.**

### E. *Second Cause of Action*

DFEH's Second Cause of Action argues that LSAC's policy of flagging score reports of individuals receiving additional time fails to ensure that the LSAT measures aptitude, rather than disability, in violation of the duties imposed on test providers under Title III of the ADA. Compl. ¶¶ 193–195. As discussed above, § 12189 requires test providers like LSAC to offer ADA-governed examinations "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. The Department of Justice, which is charged with issuing regulations to carry out Title III's provisions, *see* 42 U.S.C. § 12186(b), has interpreted § 12189 as requiring test providers to administer ADA-governed examinations:

so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills.

28 C.F.R. § 36.309(b)(1)(i). DFEH argues on the basis of these two provisions that LSAC's "blanket policy of annotating scores taken under extended time conditions" communicates "to law schools that it does not know whether or not the applicant's exam results accurately reflect aptitude or achievement, and, as such, run afoul of the ADA." Compl. ¶ 195. LSAC counters that neither the statute nor the regulation "prohibit the psychometrically sound practice of annotating scores that are achieved with extra testing time" or address "the manner in which scores are reported." Def's Motion at 15–16.

The question presented under this cause of action is relatively novel in ADA law, as demonstrated by the paucity of cases cited by either party. The sole reported case directly on point is *Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146 (3d Cir.1999). *Doe* involved a challenge brought by a medical student with multiple sclerosis against the National Board of Medical Examiners (NBME), claiming that the NBME's practice of flagging accommodated scores on the United States Medical Licensing Exami-

nation (USMLE) violated Title III of the ADA. On appeal from the district court's grant of a preliminary injunction, the Third Circuit held that § 12189's direction that exams be offered "in a place and manner accessible to persons with disabilities" does not "ipso facto" prohibit NBME from flagging test results. *Doe v. Nat'l Bd. of Med. Examiners,* 199 F.3d at 149. The court held that neither the ADA nor its implementing regulations require scores received with testing accommodations to "be declared psychometrically comparable to the scores of examinees who take the test under standard conditions." *Id.* at 156. "In the absence of a statutory proscription against annotating the test scores of examinees who receive accommodations," the court stated, "we do not view the annotation on Doe's score ... as itself constituting a denial of access" under Title III. *Id.* The court noted, however, that the record before it contained "conflicting expert testimony regarding the comparability of time-accommodated scores to scores achieved under standard conditions." *Id.* at 151. It posited that had the plaintiff demonstrated "either that his scores are psychometrically comparable to the scores of candidates who take the test under standard time conditions, or that his scores will be ignored by the programs to which they are reported, he might have demonstrated a reasonable likelihood of success on this claim," and thereby preserved his preliminary injunction against NBME. *Id.* at 156–157. "On the current record," however, the court found that Doe failed to meet his evidentiary burden. *Id.* at 157. The Third Circuit, therefore, placed the burden on the plaintiff to prove the scores were "psychometrically comparable" in order to invalidate flagging.

In an unreported decision, Judge Orrick in this District took a slightly different view of this question. *Breimhorst v. Educ. Testing Serv.,* 2000 WL 34510621 (N.D.Cal.2000),[7] concerned a challenge brought by plaintiffs' regarding the Educational Testing Service's (ETS) practice of "flagging test score reports for test takers who obtained accommodations for their disabilities to indicate that the scores were obtained under special conditions." *Breimhorst v. Educ. Testing Serv.,* 2000 WL 34510621 at *1. Ruling on ETS's motion for a judgment on the pleadings, Judge Orrick construed the applicable statutes and regulations as requiring test providers "to take steps to *best ensure* that the tests equally measure the skills of disabled and nondisabled test takers." *Id.* at *5. In light of the ADA's goal to "assure equality of opportunity for disabled people," *id.* at *5 (citing 42 U.S.C. § 12101(8)), the court refused to "focus narrowly on the ability of disabled people to take [a] test" and instead declared, "to fulfill the goals of the ADA, the test itself must allow disabled people to demonstrate their true abilities." *Id.* at *5. The court found that "§ 36.309(b)(1) [of Title 28 of the C.F.R.] imposes a *duty on test providers* to best ensure that their tests are selected and administered to equally measure the abilities of disabled and nondisabled test takers." *Id.* (emphasis added). Importantly, "if *test providers* meet this burden, then there would be no reason to flag the test results of disabled test takers who receive accommodations." *Id.* (emphasis added). Judge Orrick acknowledged that "it may be that there is no way to ensure that the test results are precisely equivalent," and in such a case, even though a test provider "may have taken steps to best ensure that

---

**7.** A copy of this decision appears in Def's Notice of Authority (Docket No. 21). While not published, the decision does not contain the words "Not for Citation" as specified in Civil Local Rule'–14 for marking uncitable orders or opinions.

the results are equal, the results may still differ so significantly that flagging is appropriate." *Id.* However, he declined to render an opinion on the matter, recognizing that it was "an issue of fact ... and not a matter to be decided on a motion for judgment on the pleadings." *Id.* Importantly Judge Orrick placed the burden of proving the "best ensure" standard on the test providers.

▆ In the instant case, the Second Cause of Action alleges that LSAC failed to carry its burden. It alleges that LSAC adhered to a blanket policy of flagging without knowing whether the applicant's exam results accurately reflect aptitude or achievement. Compl. ¶ 195. While the complaint does not allege that the scores are in fact "psychometrically equivalent," a fact Plaintiff would have to plead and prove under *Doe*, this Court is persuaded that Judge Orrick's interpretation in *Breimhorst* of the relevant laws is correct. Under *Breimhorst*, the test provider has the burden of proving it best ensured that the test equally measured abilities of disabled and non-disabled test takers. That interpretation is consistent with § 12189 which places a general duty on *test providers* to offer accessible examinations or offer alternative accessible arrangements, and the DOJ's regulation at 28 C.F.R. § 36.309(b)(1)(i) which likewise requires *test providers* to "best ensure" that the examination accurately reflects aptitude or achievement levels, not impaired skills. Judge Orrick's interpretation is also consistent with the Ninth Circuit's decision in *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153 (9th Cir.2011) *cert. denied*, — U.S. ——, 132 S.Ct. 366, 181 L.Ed.2d 232 (2011), applying § 12189. In *Enyart*, the Ninth Circuit rejected an argument that the ADA required test providers to provide "reasonable accommodations" under § 12189 instead of adhering

to the "best ensure" standard set out in the Justice Department's regulations at 28 C.F.R. § 36.309(b)(1)(i). The court held that:

one reasonable reading of § 12189's requirement that entities make licensing exams accessible is that such entities must provide disabled people with an equal opportunity to demonstrate their knowledge or abilities to the same degree as nondisabled people taking the exam-in other words, the entities must administer the exam so as to best ensure that exam results accurately reflect aptitude rather than disabilities.

*Enyart*, 630 F.3d at 1162. While the precise contours of the "best ensure" standard are not clear, it is more exacting than a "reasonableness" standard. *See Enyart*, 630 F.3d at 1161. *See also Bonnette v. Dist. of Columbia Court of Appeals*, 796 F.Supp.2d 164, 184–85 (D.D.C.2011); *Elder v. Nat'l Conference of Bar Examiners*, 2011 WL 672662, at *6 (N.D.Cal.2011); *Jones v. Nat'l Conference of Bar Examiners*, 801 F.Supp.2d 270, 284 (D.Vt.2011).

Since this question is before the Court on a Rule 12(b)(6) motion, the Court **DENIES** LSAC's motion to dismiss this cause of action.

## F. Third Cause of Action

DFEH's Third Cause of Action argues that LSAC's flagging policy unlawfully coerced and discouraged potential test-takers from seeking testing accommodations or punished those who received accommodations in violation of 42 U.S.C. § 12203. *See* Compl. ¶¶ 200–201. That provision of the ADA makes it unlawful "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of,

any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b). In support of its motion to dismiss, LSAC repeats the arguments it made earlier that "nothing in the ADA or its implementing regulations ... prohibit the psychometrically sound practice of annotating test scores," and therefore LSAC's flagging practice cannot give rise to a claim that a "right granted or protected by [the ADA]" has been violated. *See* Def's Motion (citing 42 U.S.C. § 12203(b)). This claim, based as it is on the premise that score 'flagging' cannot give rise to an ADA violation fails for the reasons discussed above.

■ LSAC also calls into question whether DFEH has adequately pled its claim of coercion and interference with sufficient facts to survive a challenge under Rule 12(b)(6). In the context of a Rule 12(b)(6) motion, "a complaint need not contain detailed factual allegations," but it "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Cousins,* 568 F.3d at 1067 (9th Cir.2009). Facial plausibility is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). As noted above, the complaint states that LSAC's practice of 'flagging' score reports of individuals who received disability related accommodations violates § 12189. As to whether that practice also intimidates disabled test-takers from seeking accommodations or punished those who received accommodations, DFEH has also pled sufficient facts to satisfy the standard set in *Cousins* and *Iqbal.* Paragraph 201 of the complaint alleges, among other things, that "flagging" score reports discourages applicants from seeking an accommodation and punishes those who do receive accommodations. As in *Breim-*

*horst,* DFEH states a claim that flagging can "coerce, intimidate, threaten, or interfere with" the enjoyment of an individual's right's under Title III of the ADA, 42 U.S.C. § 12203(b). 2000 WL 34510621 at *7. LSAC's practice of 'flagging' necessarily "announces an individual's disability above all else," and this practice "cannot be reconciled with the ADA's mandate that testing entities must administer exams so as to best ensure that exam results reflect individuals' skills and achievement level and not their disability." *See* Statement of Interests of the United States (Docket No. 29) at 13. This result, in itself, "interfere[s] with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed ... any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

The Court, therefore, **DENIES** LSAC's motion to dismiss DFEH's Third Cause of Action.

### G. *Fourth Cause of Action*

DFEH's Fourth Cause of Action argues that LSAC breached its duty to make the LSAT accessible to disabled individuals by requiring excessive documentation and by denying reasonable accommodations in violation of 42 U.S.C. § 12189 and 28 C.F.R. § 36.309(b)(1)(iv). Section 36.309(b)(1)(iv) of the ADA's implementing regulations state "any private entity offering an examination covered by this section must assure that any request for documentation, if such documentation is required, is reasonable and limited to the need for the modification, accommodation, or auxiliary aid or service requested. *Id.* LSAC does not challenge this cause of action insofar as it alleges that LSAC denied "a reasonable accommodation to each real party in interest." Def's Motion at 17. It does, however, challenge the sufficiency of the first half of DFEH's claim that it violated

rights of the Complainants by "requiring excessive amounts of documentation." *See id.*

LSAC advances two arguments in support of this component of its motion to dismiss. First, it posits that "the regulation that DFEH relies upon did not become effective" until after "LSAC processed twelve of the Complainants' requests for accommodations," and cannot, therefore, "be the source of claimed violation of their rights." Def's Motion at 18. Second, LSAC renews its argument that no private right of action exists to enforce the regulatory mandate in a slightly modified form.

Taking the second argument first, LSAC argues that DFEH cannot rely on 28 C.F.R. § 36.309(b)(1)(iv) as a "source of a claimed violation" of the ADA because "it imposes obligations that are not found in the statutory provision it purports to implement." Def's Motion at 18. LSAC cites *Lonberg v. City of Riverside*, 571 F.3d 846 (9th Cir.2009) and *Abrahams v. MTA Long Island Bus*, 644 F.3d 110 (2d Cir.2011) broadly for the proposition that "[o]nly those regulations effectuating the statute's clear prohibitions or requirements are enforceable through the statute's private right of action." *Id.* Each of these cases addressed whether plaintiffs could state a cause of action under the ADA for failure to carry out a provision of DOJ's ADA regulations; *Lonberg* addressed a public entity's obligation to create a "transition plan" to achieve program accessibility as required by 28 C.F.R. § 35.150(d), and *Abrahams* addressed procedural requirements mandated by the Department of Transportation in 49 C.F.R. § 37.137(c) that public entities permit ongoing public participation in developing and assessing paratransit services. In each case, the court held that the regulation at issue could not be enforced in a

private right of action because a public entity's violation of the regulation did not amount to a violation of the ADA. *See Lonberg,* 571 F.3d at 851 ("The existence or non-existence of a transition plan does not, by itself, deny a disabled person access to a public entity's services, nor does it remedy the denial of access."); *Abrahams,* 644 F.3d at 119 ("by its own terms, the 'ongoing requirement' of 49 C.F.R. § 37.137(c) has a broader application than the implementation of an initial plan or the submission of annual updates [as required under 42 U.S.C. § 12143] ... [t]ellingly, a public entity may be in full compliance with § 12143's public participation requirements, while simultaneously violating § 37.137(c)'s ongoing public participation requirement.").

 Unlike *Lonberg* and *Abrahams,* the regulation at issue in this case does not create an obligation that extends beyond the statutory requirements of the ADA. Section 12189 requires test providers to offer their examinations "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. Failure to do so gives rise to a private right of action "to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter." 42 U.S.C. § 12188(a)(1). The Ninth Circuit has previously considered the meaning of § 12189's language and held that "[b]ecause § 12189 is ambiguous with respect to its requirement that entities administer licencing exams in a manner "accessible" to individuals with disabilities, we defer to DOJ's interpretation of the statute so long as that interpretation is based upon a permissible construction of the statute." *Enyart v. Nat'l Conference of Bar Examiners, Inc.,* 630 F.3d 1153, 1162 (9th Cir.2011) (*Enyart* rejected a similar challenge brought by a testing entity

against a DOJ regulation that purportedly imposed an obligation beyond § 12189's statutory mandate).

The regulation at issue here requires "any request for documentation, if such documentation is required," to be "reasonable and limited to the need for the modification, accommodation, or auxiliary aid or service requested." 28 C.F.R. § 36.309(b)(1)(iv). LSAC may be correct in asserting that the language of § 12189 does not explicitly address "limitations regarding documentation," *see* Def's Motion at 17:28–18:3, but it does mandate that examinations be offered "in a place and manner accessible to persons with disabilities." Unlike the regulations at issue in *Lonberg* and *Abrahams* which clearly imposed regulatory mandates in excess of statutory text, excessive or unreasonable documentation could deny an applicant's access to an examination in violation of the ADA. In its Notice of Proposed Rulemaking preceding the agency's 2010 revisions to 28 C.F.R. Part 36, DOJ noted how "[t]hrough its enforcement efforts, the Department has discovered that the requests made by testing entities for documentation regarding the existence of an individual's disability and her or his need for a modification or an auxiliary aid or service are often inappropriate or burdensome." 73 Fed.Reg. 34508, 34539 (June 17, 2008). Thus, 28 C.F.R. § 36.309(b)(1)(iv) is simply an interpretative regulation which clarifies and gives specific meaning to § 12189. It is true that "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not," *Alexander v. Sandoval*, 532 U.S. 275, 291, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); however, § 36.309(b)(1)(iv) does not run afoul of that standard. Section 36.309(b)(1)(iv) does not create a new right; it merely delineates a concrete example of what constitutes a denial of access under the ADA with regard to a testing provider's documentation requirements.

LSAC's argument regarding the effective date of the regulation also fails. LSAC's argument implies that, absent the Justice Department's regulation found at 28 C.F.R. § 36.309(b)(1)(iv), it would not otherwise be required to limit its documentation requests to that which is "reasonable and limited to the need for the modification" [testing accommodation in this context]. 28 C.F.R. § 36.309(b)(1)(iv). This misstates the law. As noted above, the obligation to refrain from imposing inappropriate or burdensome requests for documentation in support of a testing accommodation request, springs not from the Justice Department's regulatory scheme, but from the ADA itself. Section 12189 affirmatively requires test providers to offer examinations "in a place and manner accessible to persons with disabilities." 42 U.S.C. § 12189. As the Justice Department makes clear in its Statement of Interests, for more than 20 years, the Department has interpreted this provision of the ADA as inherently limiting "requests for documentation" made by test providers to that which is "reasonable" and "limited to the need of the modification or aid requested." *See* Statement of Interests of the United States of America (Docket No. 29) at 10–11. Indeed, it codified this interpretation in the preamble to its 1991 ADA regulations. *See* 56 Fed.Reg. 35544, 35573 (July 26, 1991). When the Department issued the regulation specifically enumerating this longstanding interpretation of § 12189, it "merely sought to clarify testing entities' responsibilities under [section 12189]" in a way "that should lead to fewer misinterpretations of the requirements, more compliance with the ADA, and less discrimination in testing." Statement of Interests of the United States of America

at 11–12. The codification of this long standing interpretation at 28 C.F.R. § 36.309(b)(1)(iv) did not alter any existing rights or obligations; it merely clarified what those rights and obligations under § 12189 are and have been. Contrary to Defendant's argument, this regulation is not the source of a claimed violation of complaints rights; the ADA is, and the regulation is merely interpretive. *See Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 135, 56 S.Ct. 397, 80 L.Ed. 528 (1936) (explaining that agency rule interpreting a statute "is no more retroactive in its operation than a judicial determination construing and applying a statute to a case in hand").

For these reasons, the Court **DENIES** LSAC's motion to dismiss DFEH's Fourth Cause of Action.

## H. *Fifth Cause of Action*

DFEH's Fifth Cause of Action contends that LSAC's policy of requiring excessive documentation to support accommodation requests coerced and discouraged the real parties in interest to this suit from seeking disability related accommodations in violation of 42 U.S.C. § 12203(b). Much like its Third Cause of Action, DFEH frames this claim on the belief that requiring excessive documentation in violation of § 12189 operated in a manner that "coerce[d], intimidate[d], threaten[d], or interfere[d]" with the plaintiffs' enjoyment of their rights under the ADA. Compl. ¶ 213.

LSAC's motion to dismiss argues, in essence, that its actions were not coercive, intimidating, or threatening because (1) it has a "right to request reasonable documentation" in support of an accommodation request, and (2) DFEH merely disagrees with LSAC's assessment of what documentation was required under the ADA in order to grant plaintiffs' requested accommodations. *See* Def's Motion at 19.

DFEH does not dispute LSAC's right to request reasonable documentation under the ADA. DFEH does allege that LSAC exceeded that right in regard to the documentation requests made of the plaintiffs in this case. *See* Compl. ¶¶ 211–216. Again, in the context of a motion to dismiss under Rule 12(b)(6), the allegations of the complaint must be taken as true.

LSAC's second argument construes DFEH's Fifth Cause of Action as, essentially, a "disagreement" over factual issues as to whether Complainants sufficiently documented their need for testing accommodations, and then states that "such disagreement cannot be converted into a cause of action." Def's Motion at 19–20. The Court disagrees. This element of the Complaint alleges that LSAC's documentation policies and practices both coerced and discouraged the real parties, from seeking accommodations on the LSAT, and punished those who did apply for accommodations by subjecting them to excessive and capricious documentation requirements. The complaint states a claim under § 12203(b).

As such, LSAC's motion to dismiss DFEH's Fifth Cause of Action is **DENIED.**

## I. *Narrowing of The Class*

LSAC next challenges DFEH's authority to seek class relief under California's Fair Employment and Housing Act. Defendant argues that DFEH only has authority to seek relief on a class basis where "an unlawful practice alleged in a verified complaint adversely affects, in a similar manner, a group or class of persons of which the aggrieved person filing the complaint is a member, or where such an unlawful practice raises questions of law or fact which are common to such a group or class." Def's Motion at 20; *see also* Cal. Gov't Code § 12961. LSAC contends that

a class action complaint may only include "similarly situated" individuals to those originally filing verified complaints and may only address practices at issue in those original verified complaints. *See id.* LSAC also asserts that DFEH must properly notify it of any class-based allegations, provide LSAC the opportunity to address any allegedly unlawful actions and participate in conciliation discussions. *See id.* To that end, LSAC contends that the notice it received was improper and that DFEH insufficiently attempted to resolve the complaints in this matter through conciliation since the conciliation process consisted of only a single meeting where a settlement payment was demanded.

▮ LSAC's narrow reading here of the class relief mechanism presented in the FEHA largely duplicates its earlier argument challenging DFEH's jurisdiction to pursue claims that emerged during the course of investigating a verified complaint. As noted above, claims asserted by DFEH that are "like or reasonably related to" the allegations set forth in the Notice of Class Action are permissible under *Rodriguez v. Airborne Express, supra,* 265 F.3d 890. DFEH's Notice of Class Action clearly stated that the agency was investigating claims that LSAC "engaged in unlawful practices against [verified complainants] which were discriminatory on the basis of disability," and that its investigation would expand to include "all disabled individuals in the State of California who have or will request a reasonable accommodation for the [LSAT], administered by the LSAC, and who have or will be unlawfully denied such request" within the time period specified. Compl., Ex. 3 ¶¶ 1–3. The fact that DFEH's Notice of Class Action Complaint specifically mentions class members who were *denied* accommodations does not necessarily preclude potential class members who were *granted*

accommodations on the LSAT from being "similarly situated." Both groups of individuals may have been impacted by LSAC's allegedly unlawful practices in regards to discrimination on the basis of a disability. For example, both those who were granted and denied reasonable accommodations on the LSAT faced LSAC's alleged unlawful practices of requiring individuals to take their medication or submit a justification for failure to do so (first class cause of action), LSAC's failure to ensure that the exam measures aptitude rather than disability (second class cause of action), and LSAC's imposition of excessive documentation requirements (fourth class cause of action). *See* Compl. ¶¶ 187–204. The claims of the class members are thus similar; regardless of whether accommodations were denied or granted, their claims raise common questions of law and fact.

On the facts pled in the complaint, the declarations submitted accompanying this motion, and Ninth Circuit precedent in this area of law, the Court concludes the breadth of DFEH's class claims did not deprive LSAC of proper notice of the claims brought against it in this Complaint. Indeed, one of the first verified complaints in this matter—that of Nicholas Jones—specifically placed LSAC on notice that the scope of DFEH's investigation would be conducted on a class basis. *See* Compl., Ex. 2 (Verified Complaint of Nicholas Jones) ("I am making this complaint on behalf of myself and all other disabled individuals, who have been, are now, or will in the future be similarly aggrieved."). That same verified complaint clearly indicates that LSAC's documentation practices were being called into question. *See Id.* Having already concluded that DFEH's allegations regarding LSAC's flagging practice is "like or reasonably related to" the allegations originally presented in the verified complaints, the Court rejects

LSAC's argument that it did not receive adequate notice of the scope of allegations that ultimately made their way into the Complaint.

LSAC further argues that DFEH has no need to proceed in this matter on a class basis. *See* Def's Motion at 21, Fn.7. LSAC states that a Notice of Investigation was sent to 311 individuals, 89 of whom consented to disclosure of their names to DFEH. *Id.* From those 89 names, LSAC decided to seek relief on behalf of only seventeen individuals. *Id.* Thus, LSAC argues, DFEH has already had a chance to review "applicable records" and identified viable claims. However, LSAC offers no legal support for its assertion that DFEH's decision to proceed on a class basis is impermissible. It cites no cases or statutes that deprive DFEH of the ability to maintain a class complaint under the facts of this case. Plaintiffs' claims are all "within the scope of the administrative investigation which can reasonably be expected to grow out of the [initial charges] of discrimination." *Rodriguez v. Airborne Express* at 897.

The Court therefore rejects LSAC's arguments that the scope of DFEH's proposed class ought to be limited.

## J. Recovery of Damages Under the Unruh Act

LSAC asserts that DFEH may not recover the treble damages DFEH seeks under Cal. Civ. Code § 52 for alleged violations of the Unruh Act. Def's Motion at 21. Rather, LSAC argues that DFEH's damages claims are governed by Cal. Gov. Code § 12970. *Id.* at 22 (citing *Dep't of Fair Empl. & Housing v. Marion's Place*, 2006 WL 1130912, at *12 (Cal. FEHC 2006)). As such, LSAC claims that DFEH's claims for treble damages and a minimum recovery of $4,000 per Unruh Act violation pursuant to California Civil Code § 52 must fail as a matter of law. Def's Motion at 22.

California Civil Code § 52(a) states that those who discriminate under the Unruh Act are "liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000) ... suffered by any person denied the rights provided in Section 51, 51.5, or 51.6." Cal. Civ. Code § 52(a). Notwithstanding this provision, the California Fair Employment and Housing Commission ("FEHC") has ruled that actions before the Commission are governed not by § 52, but rather by Cal. Gov. Code § 12970, which authorizes the Commission to award damages in an amount different from that available under § 52(a). *See Dep't of Fair Empl. & Housing v. Marion's Place*, 2006 WL 1130912, at *12 (Cal. FEHC 2006).

Importantly, DFEH's complaint here is being heard in civil court and not in front of the FEHC. Indeed, as DFEH points out in its papers, LSAC chose to remove the matter to civil court in lieu of an FEHC hearing. Consequently, DFEH contends that LSAC is subject to a civil court's authority to award damages, and not damages as would be available before FEHC. Pl's Opp. at 21.

LSAC offers two arguments attempting to rebut DFEH's claim that § 52(a) governs an award of damages in this case, but both are unpersuasive. LSAC contends that nothing in the statutory provision allowing a party to have its claim heard in civil court rather than in front of the FEHC includes a requirement that the parties "forego FEHA damages in favor of damages awarded under the Unruh Act." Def's Reply at 15. In support of

its argument that a court's authority to award damages ought to parallel the damages available before FEHC, LSAC cites Cal. Govt. Code § 12970(a)(3) which states that FEHC "may award the same damages 'as may be available in civil actions under this part.'" *Id.* (citing Cal. Gov't Code § 12970(a)(3)).

Despite LSAC's arguments to the contrary, the amount of damages that can be awarded by FEHC are simply not relevant to this action. While § 12970 and *Marion's Place* may impose limits on FEHC's remedial authority, they do not purport to limit damages awardable in court. In actions removed from FEHC to court via Cal. Gov. Code § 12965(c)(1), subsection (c)(3) provides that "[a] court may grant as relief in any action filed pursuant to this subdivision any relief a court is empowered to grant in a civil action brought pursuant to subdivision (b)," the provision of FEHA involving suits in court for complaints that are not heard by the agency and for which a right-to-sue notice has issued. That statute does not incorporate any limit on damages applicable under FEHA. Courts may award aggrieved parties treble damages under the Unruh Act, *see* Cal. Civ. Code § 52. No statutory provision prevents the Court from awarding similar damages in actions brought by DFEH under 12965(b) and (c)(3).

### K. *Dismissal of Doe Defendants*

DFEH brought all five of its ADA claims against not only LSAC but also ten unnamed Doe Defendants. Compl. ¶ 5. DFEH asserts in the complaint that it is ignorant of the Doe Defendants "true names or capacities," but that it will amend the Complaint to include that information when it is ascertained through the course of litigation. *Id.* DFEH states that each Doe Defendant was an employee of LSAC during the time of the alleged un-

lawful conduct, and that each should be held jointly and severally liable to the real parties in the action for damages. *Id.* ¶ 6. LSAC makes three main arguments to support its assertion that the Doe Defendants should be dismissed from the complaint. First, LSAC asserts that DFEH failed to plead "a single fact" regarding any alleged misconduct by any of the Doe Defendants and therefore runs afoul of Fed.R.Civ.P. 8. Def's Motion at 22. Second, LSAC contends that no individual person offers the LSAT, only LSAC the business entity does, and thus there is no possibility that an individual person could be held liable for the ADA violations complained of in this action. *Id.* at 23. Third, LSAC claims that DFEH is precluded from naming the Doe Defendants because no individuals were specifically named as defendants in the original administrative complaints filed by the Complainants. *Id.* at 24.

LSAC cites *Dydzak v. George*, 2010 U.S. Dist. Lexis 144336 at *24 (C.D.Cal.2010). In *Dydzak*, a plaintiff brought suit against the State Bar of California as well as judges and other attorneys involved in an alleged "conspiracy" which led to the plaintiff's disbarment. *See Id.* at *6–7. In addition to suing the State Bar itself, the plaintiff also named ten unnamed state bar defendants, Does 1–10. *Id.* at *23. Because the complaint failed to allege specific factual matters or acts that the unidentified individuals committed beyond a general assertion of their complicity in the alleged wrongs, the court found that the claims against the Doe defendants failed to meet the pleading standards set under Fed.R.Civ.P. 8 and dismissed the Doe defendants from the action. *See id.* at *25.

■ DFEH has not submitted any legal authority or factual claims to rebut LSAC's argument. Rather, DFEH merely states that it "may find" that other

"entity defendants are responsible for some or all of the alleged ADA violations." Pl's Opp. at 22. Similar to the plaintiff in *Dydzak*, DFEH has only named ten Doe Defendants in a cursory manner and has not pled any specific factual allegations beyond the assertions that such defendants worked in some capacity for LSAC and are somehow materially involved in LSAC's alleged unlawful conduct. *See* Compl. ¶¶ 5–6. As such, DFEH has failed to meet the standard set forth by Fed. R.Civ.P. 8. Indeed, DFEH comes close to conceding that it has no strong legal basis for retaining the Doe defendants when it "asks this Court's leave to retain its DOE allegations through the date of initial disclosures." Pl's Opp. at 22.

LSAC also argues that individual liability is unavailable as a remedy under the ADA claims advanced by DFEH. *See* Def's Motion at 23. Focusing on the second and fourth claims in DFEH's complaint, LSAC contends that claims against individuals are unavailable in this case under 42 U.S.C. § 12189, since, by its terms, this section can only apply to a person that "offers" a standardized examination. *See id.* As the complaint reflects, no individual can offer the LSAT; only LSAC offers the LSAT. *Id.* Although LSAC does not advance any direct legal support to show that claims against individuals are not available under 42 U.S.C. § 12189, LSAC does support its argument by citing to several cases where courts refused to impose remedies against individual defendants under 42 U.S.C. § 12182(a), Title III's public accommodation provision. *See* Def's Motion at 23. In *Emerson v. Thiel College*, 296 F.3d 184 (3d Cir.2002), the Third Circuit held that individual college defendants did not "operate" Thiel College, a place of public accommodation, and thus were not liable under Title III of the ADA. *Emerson v. Thiel College*, 296 F.3d at 189. *See* also *White v. Creighton Univ.*, 2006 WL 3419782 (D.Neb. Nov. 27, 2006) (no ADA liability found under Title III because individual defendants do not 'operate' the university). In the absence of contrary authority, the Court finds LSAC's argument persuasive.

DFEH has failed to satisfy the pleading standard set forth by Fed.R.Civ.P. 8 regarding the ten Doe Defendants, and has likewise failed adequately to demonstrate that its causes of action can impose individual liability under the ADA. As such, the Court **GRANTS** LSAC's motion to dismiss with prejudice the ten Doe Defendants from the complaint.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Defendant's motion to dismiss the ten Doe Defendants from this action, and **DENIES** the remainder of Defendant's motion to dismiss in its entirety.

This order disposes of Docket No. 13.

IT IS SO ORDERED.